The STATE OF CALIFORNIA, acting By and Through the DEPARTMENT OF WATER RESOURCES, Plaintiff and Counterdefendant,

v.

The OROVILLE–WYANDOTTE IRRIGATION DISTRICT, an Irrigation District, Defendant and Counterclaimant.

Civ. No. S–74–597.

United States District Court, E. D. California.

Aug. 8, 1975.

Evelle J. Younger, Atty. Gen. of Cal., Iver E. Skjeie, Asst. Atty. Gen., Richard D. Martland, Deputy Atty. Gen., Sacramento, Cal., for plaintiff-appellant.

McCutchen, Doyle, Brown & Enersen, William W. Schwarzer, Lynn H. Pasahow, Susan G. Tanenbaum, San Francisco, Cal., P. J. Minasian, Minasian, Minasian, Minasian, Spruance & Baber, Oroville, Cal., for defendant-appellee.

Richard D. Gravelle, Gen. Counsel, Frederick E. John, Public Utilities Commission of Cal., San Francisco, Cal., for intervenor.

## MEMORANDUM

MacBRIDE, Chief Judge.

### HISTORY OF THE CASE

Plaintiff State of California, acting through the Department of Water Resources [hereafter DWR] initiated this declaratory and injunctive relief action against defendant Oroville-Wyandotte Irrigation District [hereafter OWID]. Both DWR and OWID are agencies of the State of California. California Water Code § 120 and § 11102. Both DWR and OWID are also licensees of the federal government through the Federal Power Commission [hereafter FPC]: DWR is licensed by the FPC pursuant to the Federal Power Act to construct and operate Project 2100 (a dam, reservoir, powerhouse, and related facilities on the Feather River near Oroville); OWID is licensed by the FPC pursuant to the Federal Power Act to construct and operate Project 2088 (a series of dams, reservoirs, powerhouses and canals on the South Fork of the Feather River near Oroville).

A segment of OWID's Project 2088 is the Miners Ranch Canal, a seven-mile long canal, communication line and maintenance road located above and parallel to a portion of DWR's Project 2100 reservoir in the Feather River's South Fork Canyon. In 1966, a dispute arose between DWR and OWID regarding the design, construction, and operation of the Miners Ranch Canal. OWID contended that the licensed operation of the DWR reservoir would destroy OWID's Miners Ranch Canal. DWR contended that even if OWID were correct, such damage would result from unauthorized modifications of the Miners Ranch Canal by OWID in violation of OWID's obligations under the Federal Power Act and OWID's license with the FPC.

From this basic dispute there followed two separate administrative proceedings—one before the FPC and the other before the California Public Utilities Commission [hereafter CPUC]—both of which resulted in final decisions. The effect of these decisions on the parties is the particular question which confronts this court. To fully understand the state of this case, it will be necessary to review these prior proceedings before the FPC and the CPUC.

(1) Proceedings before the FPC.

The Federal Power Act, Title 16 U.S.C. § 791(a) requires that each licensee file with the FPC for approval "as built" drawings reflecting its respective project as constructed. OWID filed its "as built" drawings of Project 2088 with the FPC on November 7, 1966. DWR filed a protest to this application and petitioned to intervene in the proceedings on March 6, 1967. On May 22, 1967, the FPC ordered that a hearing be held regarding both OWID's Project 2088 and DWR's Project 2100:

"This order directs a hearing involving two projects licensed by this Commission, Project No. 2088 (South Fork Project) and Project No. 2100 (Oroville Project). The matter is occasioned by an application of the licensee for Project No. 2088 for approval of 'as built' project facility drawings. Questions at issue are wheth-

er Project No. 2088 as built can be operated and maintained consistent with Project No. 2100 as licensed. If not, what actions should be taken by this Commission at this time regarding Project No. 2088 and Project No. 2100."

A hearing was held and on March 11, 1968, the FPC's Presiding Examiner issued an "Initial Decision." That decision held that OWID had a responsibility to design and construct the Miners Ranch Canal feature of its Project 2088 to operate compatibly with DWR's previously licensed Project 2100.

OWID filed exceptions to this Initial Decision and oral arguments were presented to the FPC, en banc, on November 18, 1968. The FPC issued its order January 29, 1969, permitting OWID to file revised plans for Miners Ranch Canal and directing OWID and DWR to establish a three-man Board of Consultants to review the revised plans submitted by OWID, and any comments thereto submitted by DWR. The FPC order noted:

"At oral argument OWID requested that we hold in abeyance any decision as to the Miners Ranch Canal, and that we order OWID to file revised plans in this connection within 120 days. Without expressing any opinion on the merits of the controversy, we feel it appropriate to grant OWID further time to file revised plans so that we may have before us its position as to the appropriate changes to be made to the project. Moreover, recognizing that the record shows that the DWR is not in agreement with OWID as to the revisions to be made in the plans for the Miners Ranch Canal, we deem it advisable to order the OWID to retain within 30 days from the date of the issuance of this order a board of three independent qualified consultants to assess and review the adequacy and soundness of OWID's revised plans for the Miners Ranch Canal or for the suitable facility to replace such canal. OWID shall nominate one of these consultants; DWR shall nominate one, and the two consult-

ants so selected by OWID and DWR shall together nominate the third."

OWID submitted revised plans, and DWR its comments thereto, and on July 3, 1969, the Board of Consultants issued a report thereon, and a follow-up report on December 12, 1969. On February 18, 1970, the FPC issued its "Order Upon Consideration of Reports by Board of Consultants and the Record Herein." The FPC ordered OWID to submit within six months, a revised set of plans to implement the recommendations of the Board of Consultants, and requested the DWR to "cooperate as much as possible in the situation."

OWID submitted revised plans to the FPC, DWR reviewed the revised plans and recommended that the Board of Consultants be again convened to review the plans. The FPC, through its Secretary, directed that the Board of Consultants be again convened and on December 7, 1971, the Board of Consultants issued its third report.

Ultimately, OWID submitted a final revised plan which was approved by the FPC in its order of January 17, 1974. That order added Article 51 to the conditions set forth in OWID's license for Project 2088, which article provides:

"Article 51. Licensee [OWID] shall commence construction of the tunnel for the lower reach of the Miners Ranch Canal at the earliest possible date, but not later than September 1, 1974, and shall thereafter in good faith and with due diligence, prosecute such construction, and shall complete the tunnel by August 31, 1976."

The order of the FPC became a final order on February 12, 1974.

(2) Proceedings before the CPUC.

On October 12, 1966, OWID filed Application No. 48869 with the CPUC alleging that the close proximity of Oroville Reservoir to the Miners Ranch Canal created conditions which would ultimately take or destroy the canal. OWID asserted that California Water Code §§ 11590–11592 (West 1973) required DWR to construct a replacement facility for the entire Miners Ranch Canal. Sections 11590–11592 provide as follows:

"§ 11590. *Substitution of facilities; agreement*

The department has no power to take or destroy the whole or any part of the line or plant of any common carrier railroad, other public utility, or state agency, or the appurtenances thereof, either in the construction of any dam, canal, or other works, or by including the same within the area of any reservoir, unless and until the department has provided and substituted for the facilities to be taken or destroyed new facilities of like character and at least equal in usefulness with suitable adjustment for any increase or decrease in the cost of operating and maintenance thereof, or unless and until the taking or destruction has been permitted by agreement executed between the department and the common carrier, public utility, or state agency."

"§ 11591. *Expenses*

The expense of the department in complying with the requirements of this article is part of the cost of constructing the project."

"§ 11592. *Public Utilities Commission; submission of controversies*

In the event the department and any common carrier railroad, other public utility, or state agency fail to agree as to the character or location of new facilities to be provided as required in this article, the character and location of the new facilities and any other controversy concerning requirements imposed by this chapter shall be submitted to and determined and decided by the Public Utilities Commission of the State."

DWR responded to OWID's application by way of a motion to dismiss for lack of jurisdiction asserting that the FPC and the federal courts have exclusive jurisdiction over disputes arising under the liabilities and duties imposed upon FPC licensees by their respective power licenses and by the Federal Power Act. DWR's motion was

denied. A petition for rehearing was filed and it was denied.

A hearing was conducted in September 1967 and at the outset of the hearing, counsel for DWR stated:

"MR. SKJEIE: First of all, I'd like the record to be made plain in one respect and that is that by its participation herein, the State in no way waives its federal law claims for its right to an adjudication thereof in the Federal Courts and before the Federal Power Commission."

On August 13, 1968, CPUC rendered Decision No. 74542. That decision held that DWR was responsible for replacing the entire Miners Ranch Canal with a substitute facility, a pumping plant:

"1. The substitute facility to be provided by the respondent Department of Water Resources pursuant to Section 11590 for the facilities of the applicant Oroville-Wyandotte Irrigation District to be taken or destroyed by said Department of Water Resources shall be a plant designed to pump water from Oroville Dam into the Miners Ranch Tunnel. The flow of water from applicant's upstream storage area will be directed into Oroville Dam as soon as the pumping plant is in operation."

With respect to FPC jurisdiction, the CPUC noted in Decision 74542 as follows:

"It is difficult to conceive how any Commission [CPUC] action could interfere with the jurisdiction of the Federal Power Commission. The latter agency is not concerned with local disputes other than to insure that sponsored projects are efficiently constructed to perform stated functions."

On October 8, 1968, DWR's petition for rehearing of Decision 74542 was denied. On August 10, 1970, OWID petitioned CPUC for a modification of Decision 74542 to change the facilities which DWR was ordered to construct from a pumping plant to a tunnel. Pursuant to OWID's petition, CPUC rendered Decision 79724 on February 15, 1972, which provided:

"IT IS ORDERED that:

"1. Ordering paragraph 1 of Decision No. 74542 is superseded as follows:

The substitute facilities to be provided by the respondent Department of Water Resources pursuant to Section 11590 for the facilities of the applicant, Oroville-Wyandotte Irrigation District, to be taken or destroyed by said Department of Water Resources shall be as follows:

(a) A tunnel approximately 4,400 feet in length extending from the vicinity of the intake tunnel upstream to near the lower siphon, and replacing the lower reach of the canal.

(b) An improved all-weather roadway along the remaining length of the canal.

(c) Slope protection below the remaining length of the canal providing an adequate mantle of coarse material."

DWR petitioned for rehearing and CPUC granted a partial rehearing on the question "whether any inconsistency which may exist between Finding No. 1 of Decision No. 79724 and any FPC Order may be caused by ordering the Department of Water Resources to be *financially* responsible for" the requirements of paragraph 1 of Decision 79724.

On March 12, 1974, CPUC issued Decision 82561 revising paragraph 1 of Decision 79724 by making DWR *financially* responsible for the requirements imposed by that paragraph.

Pursuant to California Public Utilities Code § 1756, DWR petitioned the California Supreme Court for review of the CPUC Decision 82561. The petition for review was untimely filed. On September 12, 1974, the petition was denied without a hearing and without an opinion. A petition for rehearing of the denial was also denied without hearing or opinion on October 10, 1974.

## MOTION FOR INTERVENTION

As an initial matter, CPUC has moved this court to intervene pursuant to Federal Rules of Civil Procedure 24(a)(2), intervention as of right, or in the alternative, Rule

24(b), permissive intervention. At a January 3, 1975, hearing on this and other motions, neither DWR nor OWID objected to the intervention of CPUC, and accordingly, this court granted CPUC's motion to intervene.

## CONTENTIONS OF THE PARTIES

### (1) DWR's Complaint.

Plaintiff DWR filed this action for declaratory and injunctive relief on October 3, 1974, asserting that the orders of the FPC (specifically the January 17, 1974, order adding article 51 to the conditions of OWID's license) and the order of the CPUC (specifically the March 12, 1974, Decision 82561 making DWR financially responsible to provide substitute facilities for Miners Ranch Canal) conflict on both the law and the facts.

In this regard, plaintiff DWR sought two things: (a) declaratory relief as to which order controls the obligations of OWID and DWR; and (b) since OWID has demanded that DWR comply immediately with the order of the CPUC, DWR asks for a preliminary injunction to maintain the status quo pending the final disposition of the declaratory relief action. At the January 3, 1975, hearing in this matter, upon the court's mention that DWR had not formally moved the court for preliminary injunction nor supplied the court with points and authorities, DWR dropped its request for a preliminary injunction, considering it not yet "ripe."

In its complaint, DWR asserts that the action is brought to establish liabilities and duties under the provisions of the Federal Power Act, Title 16 U.S.C. §§ 791a–828c. Jurisdiction is asserted under three separate bases:

(a) 16 U.S.C. § 825p (a segment of subchapter III of Chapter 12 of the Federal Power Act:

"The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. . . ."

(b) 28 U.S.C. § 1337:

"The district courts shall have original jurisdiction of any court action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

(c) 28 U.S.C. § 2201:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

### (2) OWID's Motions.

OWID has moved this court to dismiss the action on several grounds, or in the alternative, for summary judgment. The motion to dismiss challenges the sufficiency of the complaint on the following grounds: (a) lack of subject matter jurisdiction; (b) lack of justiciability; (c) *res judicata* effect of the decisions of the CPUC and the California Supreme Court; (d) *res judicata* effect of a decision by the Ninth Circuit in *State of California v. Oroville-Wyandotte Irrigation District*, 409 F.2d 532 (9th Cir. 1969); (e) there is no conflict between the decisions of the FPC and the CPUC.

OWID, in its answer, raised a counterclaim against DWR under state law for the enforcement of the CPUC order. The motion for summary judgment seeks only judgment on this counterclaim as a matter of law. Obviously, the validity of the counterclaim and OWID's motion for summary judgment is irrevocably tied to the declara-

tory relief action raised by DWR in the first instance.

(3) Motions by CPUC.

CPUC, the intervenor, has moved to dismiss or in the alternative, for summary judgment in its favor and against DWR on the following bases: (a) lack of jurisdiction over the subject matter on the basis of the *res judicata* effect of the CPUC. and California Supreme Court decisions herein; (b) there is no conflict between the decisions of the FPC and the CPUC.

(4) DWR's Motion for Summary Judgment.

DWR has made a cross motion for summary judgment and raises the following contentions: (a) there is a conflict between the decisions of the FPC and the CPUC in this case; (b) the Federal Power act preempts operation of California Water Code §§ 11590–11592; (c) the decision by the California Supreme Court is not *res judicata* because not on the merits as the petition for review was untimely filed.

DECISION

It is possible to cut through the convoluted history of this case and the maze of motions herein and dispose of it by deciding the central issue.

■ As an initial matter, this court agrees with DWR that jurisdiction is proper here pursuant to 16 U.S.C. § 825p. While the courts of appeal have authority pursuant to 16 U.S.C. § 8251 to review on appeal orders of the FPC, the district courts are empowered pursuant to 16 U.S.C. § 825p to enforce violations of orders of the FPC or suits in equity to enforce any liability or duty created by an order of the FPC. This jurisdictional base can be read in conjunction with the Declaratory Relief Act, 28 U.S.C. § 2201, which affords power to district courts in actual cases and controversies to declare rights and liabilities between parties. In the instant case, there is a conflict between DWR and OWID in the way these agencies interpret the effect of the decisions by the FPC and the CPUC.

■ At the heart of the matter, however, this court must concur with OWID and the CPUC that there is, in fact, no conflict between the decisions of the FPC and the CPUC. The decision of the FPC requires that the OWID actually construct the tunnel for the Miners Ranch Canal and provides a date for completion. The decision of the CPUC notes that the operation of the DWR project will take or destroy the Miners Ranch Canal aspect of the OWID project and therefore orders the DWR to be *financially* responsible for a substitute facility.

The national importance and scope of federal power projects prevents the states from exercising a veto power over such projects as have been designated by appropriate federal agencies. *First Iowa Hydro-Electric Coop. v. Federal Power Commission*, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946). Nevertheless, the courts have long recognized that while the Federal Power Act confers broad federal control on power projects, the states continue to exercise compatible powers. As the Supreme Court noted in *First Iowa, supra:*

"In the Federal Power Act there is a separation of those subjects which remain under the jurisdiction of the states from those subjects which the Constitution delegates to the United States and over which Congress vests the Federal Power Commission with authority to act. To the extent of this separation, the Act establishes a dual system of control. The quality of control consists merely of the division of the common enterprise between two cooperating agencies of Government, each with final authority in its own jurisdiction." 328 U.S. at 167–168, 66 S.Ct. at 913, 90 L.Ed. at 1151.

In 1969 when a decision of this court in the instant case had first been appealed to the Ninth Circuit Court of Appeals, that court recognized that the State of California through the CPUC's application of California Water Code §§ 11590–11592, had a

role to play which was compatible with federal authority under the Federal Power Act. *State of California v. Oroville-Wyandotte Irrigation District,* 409 F.2d 532 (9th Cir. 1969). In its opinion the Ninth Circuit said:

"[DWR] urges that [*First Iowa, supra*] applies. In that case, the FPC refused to issue a license until the applicant obtained approval from the state. The Court held that this gave the state a veto power over federal projects and destroyed the effectiveness of the Federal Power Act. In the present case, however, the California Public Utilities Commission does not have a veto power over the Department's Oroville Dam Project. *It is merely charged with the duty of determining liability for damage done by one California agency to the property of another.*" [emphasis added] 409 F.2d at 536.

This court concurs that the action of the CPUC, pursuant to California Water Code §§ 11590–11592, in establishing the financial liability of DWR for the taking and destruction of a portion of the OWID project, was a permissible action. The CPUC did not substantially alter nor did it prevent the operation of federal power projects. The CPUC action was not an interference with federal power projects, but rather, was in aid of these projects. As such, the action of the CPUC was entirely compatible with the duality inherent in the Federal Power Act.

█ There is no doubt as to the applicability of the summary judgment procedure to a proceeding for declaratory relief. See 6 Moore's Federal Practice ¶ 56.17 at p. 2541 (1974). Accordingly, the motions of OWID and CPUC for summary judgment are GRANTED and the motion of DWR for summary judgment is DENIED. Declaratory judgment is entered in accordance with the views expressed in this memorandum.

IT IS SO ORDERED.