AIRCO ALLOYS DIVISION, AIRCO, INC., et al., Respondents, v NIAGARA MOHAWK POWER CORPORATION et al., Appellants.

Fourth Department, December 15, 1978

## APPEARANCES OF COUNSEL

*Jaeckle, Fleischmann & Mugel (John H. Stenger* of counsel), for Niagara Mohawk Power Corporation, appellant.

*Lewis R. Bennett (Vito J. Cassan, Stephen D. Finale* and *Vincent J. Tobin* of counsel), for Power Authority, appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear (Victor Fuzak* of counsel), for respondents.

*Aular & Woodbury (Robert Woodbury* of counsel), for Carborundum Corp., intervenor-respondent.

## OPINION OF THE COURT

SCHNEPP, J.

This is an appeal from an order at Special Term denying motions of Niagara Mohawk Power Corporation ("Niagara Mohawk") and Power Authority of the State of New York ("PASNY") to dismiss the complaint or in the alternative to stay all further proceedings. Plaintiffs, major industrial facilities in western New York and purchasers of electric power from Niagara Mohawk, who claim rights as third-party beneficiaries under the terms of a contract ("Contract NS-1") between Niagara Mohawk and PASNY relating to the sale of electric power generated on the Niagara River, seek a mandatory injunction and money damages arising from Niagara Mohawk's alleged breach of the contract.

From the complaint and moving papers it appears that the United States was permitted, pursuant to certain treaties with Canada, to divert portions of the flow of the Niagara River for the purpose of generating hydroelectric power. Niagara Mohawk by virtue of a license issued by the Federal Power Commission ("FPC") utilized a portion of the river flow for power generation purposes at certain generating stations on the Niagara River (Federal Power Commission Project 16) with a capacity of 445,000 kilowatts until June 7, 1956 when a rock slide destroyed the generating station which was the principal source of this power. Thereafter, the Congress of the United States enacted Public Law 85-159 (71 US Stat 401, US Code, tit 16, § 836), also known as the Niagara Power Project Act ("Act"), which authorized the FPC to issue a license to PASNY to construct and operate a power project with capacity to utilize all of the share of the water of the Niagara River which was permitted to be used by the United States under its treaties. As a condition of the issuance of the license to PASNY and in order to restore low-cost power to western New York industries, the Act provided that: "(3) The licensee shall contract, with the approval of the Governor of the State of New York, pursuant to the procedure established by New York law, to sell to the licensee of Federal Power Commission project 16 for a period ending not later than the final maturity date of the bonds initially issued to finance the project works herein specifically authorized, four hundred and forty-

five thousand kilowatts of the remaining project power, which is equivalent to the amount produced by project 16 prior to June 7, 1956, for resale generally to the industries which purchase power produced by project 16 prior to such date, or their successors, in order as nearly as possible to restore low power costs to such industries and for the same general purposes for which power from project 16 was utilized" (US Code, tit 16, § 836, subd [b], par [3]). After the FPC issued the license, PASNY constructed generating and related facilities on the Niagara River, and on February 10, 1961 entered into Contract NS-1 with Niagara Mohawk as required by the terms of the Act and its license. Contract NS-1 defines "replacement power" as power made available "pursuant to Public Law 85-159 to replace power formerly produced by * * * [Niagara Mohawk]", and provides that it be sold by Niagara Mohawk to industrial customers "in accordance with Public Law 85-159". Article 22 of the PASNY license contains the exact statutory language of the Act, quoted above, which is incorporated by reference in Contract NS-1. Allegedly as mandated by the Act and Contract NS-1 the 445,000 kilowatts were allocated to industries which purchased power produced by Niagara Mohawk prior to June 7, 1956, including plaintiffs and intervenors. For various reasons, however, certain of those industries either discontinued or reduced their usage of replacement power resulting in the return of approximately 110,000 kilowatts which have been distributed by Niagara Mohawk to satisfy its general system requirements.

Plaintiffs claim that they are entitled to all or a part of the relinquished replacement power and that Niagara Mohawk's conduct in this regard has been in violation, breach and derogation of plaintiffs' rights under Contract NS-1 and the Federal Act. Thus, the action was commenced against Niagara Mohawk. PASNY was joined as a necessary party defendant. In lieu of answering, both defendants have submitted motions arguing that the New York State Supreme Court does not have jurisdiction over the subject matter because section 317 of Federal Power Act (US Code, tit 16, § 825p) grants exclusive jurisdiction to the District Courts of the United States. PASNY additionally asserts that it has petitioned the Federal Energy Regulatory Commission ("FERC"), successor to the FPC, for a declaratory order construing article 22 of the license granted by the FPC for the Niagara Power Project, and that plaintiffs who have intervened in these proceedings

have failed to exhaust their administrative remedies. Further, PASNY contends that FERC has primary jurisdiction since the interpretation of the license condition relating to replacement power is a subject matter that is peculiarly within the specialized field of FERC, which has been entrusted by Congress with the administration of these licenses, the Federal Power Act, and the Niagara Development Act, all of which are incorporated into Contract NS-1. Both defendants argue in the alternative that this action should be stayed pending a ruling by FERC upon PASNY's application. Additionally, Niagara Mohawk asserts that all necessary and indispensable parties have not been joined in this action. Plaintiffs reply that the suit is not one for violation of any Federal law, rule, regulation or order, or brought to enforce any liability or duty created by or to enjoin any violation of any Federal law. Rather, it maintains that the subject matter of the action is a common-law claim of nonperformance of a New York State contract, that the doctrine of primary jurisdiction has no application and that all necessary parties are before the court. We agree.

█ Section 317 of the Federal Power Act (US Code, tit 16, § 825p) grants to the District Courts of the United States exclusive jurisdiction of violations of the Federal Power Act and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of the Act or of any rule or regulation or order thereunder. The Federal Power Act which is specifically referred to in the Niagara Power Project Act (Public Law 85-159) was the source of FPC's power to issue the order granting the PASNY license which was authorized by the Act. Thus the order licensing PASNY to construct and operate the Niagara Power Project was an order issued under the Power Act and exclusive jurisdiction over any suit to enforce liabilities or duties created by the order would be in the District Courts of the United States. The replacement power would not exist except for the Federal statutes and it is obvious that the scope of the rights eventually to be allocated by contract was Federally defined. It does not follow, however, that the order by which PASNY was granted its license is the source of the rights asserted by plaintiffs.

█ It is clear that traditional common-law claims do not lose their character because it is common knowledge that there exists a related, and perhaps relevant, scheme of Fed-

eral regulation *(Pan Amer. Corp. v Superior Ct.,* 366 US 656, 663). Equally well established is the principle that exclusive jurisdiction provisions do not divest the State courts of the power to decide questions arising under the laws of the United States, but only "cases" arising under those laws (see *Pratt v Paris Gas Light & Coke Co.,* 168 US 255, 259 [addressing, specifically, the exclusive jurisdiction provision of the United States patent laws]; see, also, *Pan Amer. Corp. v Superior Ct., supra,* p 664; *American Harley Corp. v Irvin Inds.,* 27 NY2d 168, 174, cert den 401 US 976; *New Era Elec. Range Co. v Serrell,* 252 NY 107, 112). In *American Harley Corp. v Irvin Inds. (supra,* p 173) the New York Court of Appeals, in a case concerning the analogous question of exclusive Federal jurisdiction over cases arising under the patent laws, quoted approvingly from *Koratron Co. v Deering Milliken* (418 F2d 1314, 1317, cert den 398 US 909) where it was stated: "According to these [Supreme Court] decisions, characterization of the action as a patent or nonpatent suit * * * turns on the form in which the plaintiff has chosen to cast his complaint: '* * * Jurisdiction generally depends upon the case made and the relief demanded by the plaintiff' [cases cited]". Likewise, in *Pan Amer. Corp. v Superior Ct. (supra,* p 662) the United States Supreme Court, faced with a jurisdictional question revolving around the exclusive jurisdiction provision here in issue, held: "[Q]uestions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate issues of federal law. *The answers depend on the particular claims a suiter makes in a state court—on how he casts his action.* Since 'the party who brings the suit is master to decide what law he will rely upon,' *The Fair v. Kohler Die & Specialty Co.,* 228 US 22, 25, the complaints in the [trial court] determine the nature of the suits before it" (emphasis added). (See, also, *Koratron Co. v Deering Milliken, Inc.,* 418 F2d 1314, 1316-1317, cert den 398 US 909, *supra; Landon v Northern Natural Gas Co.,* 338 F2d 17, 20, cert den 381 US 914; *Cleveland Elec. Illuminating Co. v City of Cleveland,* 50 Ohio App 2d 275.) Therefore, if the instant complaint may be characterized as one asserting traditional contract rights and seeking ordinary contract relief, then jurisdiction would properly be found in the New York courts, regardless of the exclusive jurisdiction provision in the Federal Power Act.

■ ■ The language of the complaint describes violations of

plaintiffs' rights under the Act as well as the contract, but the main thrust of the complaint is in contract, which is the basis for the primary relief sought. The focus of the controversy is on the rights expressed in this contract, not on the rights established or created by Federal law which became the subject of a valid contract. The claims relating to the contract are the only grounds alleged which would sustain an injunction and money damages, and mere references in the complaint to the Federal act do not divest the State court of its jurisdiction *(Luckett v Delpark,* 270 US 496, 510-511; *Wilson v Sandford,* 10 How [51 US] 99). Although the components of the instant case are: (1) a treaty (Federal), (2) statutes (Federal), (3) a license (Federal), and (4) a contract (State), only the contract element is in controversy here. Briefly stated, Congress directed PASNY to contract with Niagara Mohawk to ensure electric power for generally selected specified industries in Western New York State at low cost. It made no other provision concerning the terms of the contract. The Act and the license merely required that 445,000 kilowatts of the project power be sold to Niagara Mohawk for resale to the industries in question. The incorporation by reference in the contract of the license provisions of the Federal Power Act does not make FERC a party to the contract.

Niagara Mohawk's violation of the contract does not constitute a violation by PASNY of the license. The relief plaintiffs seek is not related to the power of the Federal Government to regulate for power purposes the navigable waters—because this has already been done. Plaintiffs are not trying to exercise dominion or control over navigable waters. While Federal law may be the source of all the rights in issue, the court is called upon only to determine whether Niagara Mohawk is failing to carry out the terms of a contract made within New York State, affecting only New York State interests and deriving its force from New York State law. Plaintiffs make no claim that the contract violates the Federal statutes and do not seek to revise any congressional actions. FERC has no jurisdiction over resales of power. Furthermore, it has no jurisdiction over plaintiffs, Niagara Mohawk or PASNY, except to ensure that PASNY complies with the condition of the issuance of the license to contract to sell to Niagara Mohawk —and this has been accomplished. FERC's concern with the disposition of the 445,000 kilowatts of power ceased once the contract was made. It does not have the authority necessary

to decide any issue here and questions raised relating to FERC's alleged special expertise or primary jurisdiction are irrelevant (cf. *Slocum v Delaware, Lackawanna & Western R. R. Co.*, 339 US 239). The contract remains an instrument separate and distinct from the license, and the incorporation of the provisions of the congressional enactments and license into Contract NS-1 constitutes ordinary contract language, binding only upon the parties to the contract.

■ Furthermore, plaintiffs have and claim no right independent of the contract. PASNY has the right to develop the available energy source, conditioned upon its contracting with Niagara Mohawk "to restore low power costs to * * * industries [which purchased power provided by project 16 before June 7, 1956] and for the same general purposes for which power from project 16 was utilized" (US Code, tit 16, § 836, subd [b], par [3]). By the terms of the Act plaintiffs were accorded nothing more than a mere expectation that low-cost power would again become available, and any enforceable rights to that power were granted only by Contract NS-1. Clearly, Contract NS-1 is the focus of the controversy.

■ Plaintiffs seek protection for a property right under the contract against an alleged breach of the contract, and will endeavor to establish at trial that Niagara Mohawk had no right under Contract NS-1 to reserve any of the replacement power capacity for its own general system requirements. The ground for recovery is Contract NS-1, not the Act or the Federal power law, and New York courts may determine questions which may arise under the Federal power law when incidental to cases not arising under this law (see *New Era Elec. Range Co. v Serrell*, 252 NY 107, 112, *supra*).

Appellants' reliance on *City of Cleveland v Cleveland Elec. Illuminating Co.* (570 F2d 123) is misplaced. There the city was ordered by FPC to enter into a contract (at issue) and the cause of action was to enforce a specific order of FPC, which had previously determined the rights of the parties. The cause of action was deemed to be within the District Court's jurisdiction. Both parties were subject to the FPC order in question, an element entirely lacking here. PASNY, the party primarily subject to the FPC order, is a necessary party defendant only because it is the other party to Contract NS-1. Niagara Mohawk has been issued no license, is not subject to any FPC order, and was not specifically directed by the Act or the license to contract with PASNY.

Moreover, a comparison of paragraphs (2) and (3) of the Niagara Power Project Act supports the conclusion that Congress, by using the word "contract" in paragraph (3) of subdivision (b), intended to indicate that disputes should. be settled in State court. Paragraph (2) of subdivision (b), dealing with sales of power for use in neighboring States, expressly provides: "The licensee [PASNY] shall make a reasonable portion of the project power * * * available for use within reasonable economic transmission distance in neighboring States * * * In the event of disagreement between the licensee and the power-marketing agencies of any such States, *the Federal Power Commission may,* after public hearings, *determine and fix the applicable portion of power to be made available and the terms applicable thereto"* (emphasis supplied). On the other hand, paragraph (3) of subdivision (b), dealing with the sale of replacement power, provides that the licensee (PASNY) should enter into a "contract" and makes no special provision for the resolution of disputes which could be expected to arise thereunder.

■ The motion to dismiss for failure to join all necessary parties is also without merit. Dismissal is not dictated solely by the absence of a necessary party (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1001:1, p 368). FERC is the only party claimed by Niagara Mohawk to be a necessary party which is not subject to the jurisdiction of the court. FERC, being neither a party to nor a beneficiary under Contract NS-1, can in no way be prejudiced by a New York interpretation of the language contained in that instrument and is not a necessary party. No industry, joined or nonjoined, received any right by virtue of the license; it is a construction of the contract that is sought in this lawsuit and the court will be able to afford complete relief in the absence of FERC. Further, for the reasons previously set forth Special Term did not abuse its discretion in denying defendant's motion for a stay (2A Weinstein-Korn-Miller, NY Civ Prac, par 2201.05).

The order appealed from should be affirmed.

CARDAMONE, J. P., DILLON and WITMER, JJ., concur.

Order unanimously affirmed, with costs.