530 A.2d 913

**John H. ENGLE, William R. Engle, William C. Engle, t/d/b/a Engle's Holiday Harbor, a Partnership and as Representative of a Class**

v.

**WEST PENN POWER COMPANY, a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued June 4, 1987.

Filed Aug. 25, 1987.

Harold R. Schmidt, Pittsburgh, for appellant.

C. James Zeszutek, Pittsburgh, for appellees.

Before DEL SOLE, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from an interlocutory order granted by permission by Superior Court to the appellant/defendant, West Penn Power Company. See Pa.R.App.P. 312; 42 Pa.C.S. § 702(b).

The record discloses that in November of 1985 the plaintiffs John H. Engle, William R. Engle and William C. Engle, t/d/b/a Engle's Holiday Harbor, a partnership, sought certification as representatives of a class in excess of fifty members whose property suffered damages due to the defendant's alleged negligence in the operation of its Lake

Lynn hydro-electric dam on the Cheat River in West Virginia.

The plaintiffs averred in their class action complaint that, inter alia, the commonality of questions of law and fact, when coupled with the complexities of the issues and the economies of scale that could be achieved by litigating the claims together, warranted that they be denominated representatives of the class action suit.

The two-count complaint sounded in negligence and alleged the defendant's maintenance of a dangerous instrumentality (the hydro-electric power dam) and the resultant imprudent release of water retained thereby, which, purportedly, was the direct and proximate cause of flooding in the area for which damages in excess of ten thousand dollars were being sought by the plaintiffs on behalf of the class once representative status was bestowed upon them.

Next of record appears preliminary objections, filed by counsel for the defendant, raising a question of jurisdiction. It was recounted therein that the dispute had been removed, by the defendant, to the United States District Court for the Western District of Pennsylvania. In a Memorandum Opinion filed by the Honorable Alan N. Bloch, the case was remanded to Common Pleas Court upon a finding that the claims of negligence and maintenance of a dangerous instrumentality were state law claims. In support thereof, Judge Bloch wrote:

> Under the "well-pleaded complaint" rule, a defendant "may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law. *Franchise Tax Board [v. Construction Laborers Vacation Trust]*, 463 U.S. [1] at 10 [103 S.Ct. 2841, at 2846–47, 77 L.Ed.2d 420 (1983).]"

(Memorandum Opinion at 3)

Because the face of the complaint could not be read as raising a federal question (under 28 U.S.C. § 1331) without reference to the petition seeking removal, the District Court concluded that removal was not called for and remanded. However, in footnote 3, the District Court reserved its

ruling on the merits of the defendant's contention that the plaintiffs' claims were within the exclusive jurisdiction of the federal courts,[1] and, as a result, the defendant was free to raise this question in Common Pleas Court. It did so.

In an opinion and order dated August 4, 1986, Common Pleas Court dismissed the defendant's preliminary objections in regard to subject matter jurisdiction, but it granted the defendant's demurrer to count II of the plaintiffs' complaint, in that insufficient assertions had been made as to the maintenance of a hydro-electric dam being a dangerous instrumentality. Twenty days were afforded to amend the complaint.

On the question of class description, the defendant's objections thereto were dismissed without prejudice. Thereafter, a "Petition To Amend Order To Certify Controlling Question Of Law And To Stay Proceedings Pending Appeal" was filed by counsel for the defendant. The Petition was granted by order dated August 18, 1986, and, with Superior Court subsequently granting permission to appeal, the matter is presently before us for resolution.

The first issue we need to deal with relates to whether the plaintiffs' cause of action, grounded upon principles of negligence and the construction, maintenance or operation of an allegedly dangerous instrumentality by the appellant, is subject to exclusive federal jurisdiction pursuant to Sections 10(c) and 317 of the Federal Power Act (16 U.S.C. §§ 803(c) and 825p), and, therefore, is more appropriately subject to review in federal District Court and not Common Pleas Court.

> "[T]he question whether a certain state action is preempted by federal law is one of congressional intent. ' "The purpose of Congress is the ultimate touch-stone." ' "

1. The procedure followed by the District Court was a proper one. See *Franchise Tax Board of the State of Calif. v. Construction Laborers Vacation Trust For Southern Calif., et al.,* 463 U.S. 1, 8, 103 S.Ct. 2840, 2845, 77 L.Ed.2d 420 (1983).

*Pilot Life Insurance Co. v. Dedeaux,* —— U.S. ——, ——, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (Citations omitted).

In making our determination of Congress' intent with regard to the Federal Power Act, we look first to the instructive case of *Pan American Petroleum Corp. v. Superior Court of Delaware,* 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961).

In *Pan American,* the petitioners sought to prohibit by writ the Superior Court of Delaware from adjudicating a contractual dispute involving the sale of natural gas by the petitioners to Cities Service.

It was the contention of the petitioners that the Natural Gas Act (15 U.S.C. § 717 et seq.) deprived the state court of jurisdiction over the subject matter in dispute, i.e., a contract.

The contract provided that gas produced by the petitioners from a particular field located in Kansas would be purchased by Cities Service at a fixed price. Thereafter, the Corporation Commission of the State of Kansas fixed a minimum price for the gas removed from the particular field which required Cities Service to pay petitioners a higher rate than set forth in the contract.

Cities Service sued in the Kansas courts to obtain judicial review. Pending resolution of the suit, Cities Service advised the petitioners in a letter that payment of the required fixed (higher) price was being made to avoid any penalties flowing from the Kansas statutes for a violation thereof.

Although the validity of the minimum-rate order by the Kansas Commission was upheld by the State Supreme Court, the United States Supreme Court reversed. As a result, complaints were filed in the Delaware Superior Court by Cities Service seeking recoupment of the overcharges paid to the petitioners under the invalidated Kansas minimum-rate order. The petitioners' request for summary judgment was denied, and what followed was an assault on the jurisdiction of the Superior Court to entertain Cities Service's cause of action in contract. The Delaware Su-

preme Court sustained the jurisdiction of the Superior Court.

On certiorari to the United States Supreme Court, the actions of the courts below were affirmed despite a provision (§ 22) providing for exclusivity of jurisdiction in the federal courts as to the Natural Gas Act.[2] In fact, despite this seeming preemption of the field by the federal courts as to the Natural Gas Act, the United States Supreme Court cogently stated:

... questions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate substantive issues of federal law. The answers depend on the particular claims a suitor makes in a state court—on how he casts his action. Since "the party who brings a suit is master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716, the complaints in the Delaware Superior Court determine the nature of the suits before it. Their operative paragraphs demand recovery on alleged contracts to refund overpayments in the event of a judicial finding that the Kansas minimum-rate order was invalid, or for restitution of the overpayments by which petitioners have allegedly been unjustly enriched under the compulsion of the invalid Kansas order. No right is asserted under the Natural Gas Act.

The suits are thus based upon claims of right arising under state, not federal, law. It is settled doctrine that a case is not cognizable in a federal trial court, in the absence of diversity of citizenship, unless it appears from the face of the complaint that determination of the suit

2. § 22 of the Natural Gas Act, as is herein relevant, reads:
   The District Courts of the United States * * * shall have exclusive jurisdiction of violations of this [statute] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this [statute] or any rule, regulation, or order thereunder.
   The Act of June 21, 1938, c. 556, § 22, 52 Stat. 833, as amended, 15 U.S.C. § 717u.

depends upon a question of federal law. See, e.g., *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194, and cases cited. Apart from diversity jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * * " *Gully v. First National Bank*, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97, 81 L.Ed. 70.

For this requirement it is no substitute that the defendant is almost certain to raise a federal defense. See *Skelly Oil Co. v. Phillips Petroleum*, supra; *Gully v. First National Bank*, supra, and authorities cited in those cases. Equally immaterial is it that the plaintiff could have elected to proceed on a federal ground. *Henry v. A.B. Dick Co.*, 224 U.S. 1, 14–17, 32 S.Ct. 364, 366–367, 56 L.Ed. 645. If the plaintiff decides not to invoke a federal right, his claim belongs in a state court.

The rights as asserted by Cities Service are traditional common-law claims. They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas. What was said in *Gully v. First National Bank*, 299 U.S. at page 116, 57 S.Ct. at page 99, is apposite:

"We recur to the test announced in *Puerto Rico v. Russell & Co.* [288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903], supra: 'The federal nature of the right to be established is decisive—not the source of the authority to establish it.' Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. *Louisville & Nashville R. Co. v. Mottley*

[211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126], supra. With no greater reason can it be said to arise thereunder because permitted thereby."

We are not called upon to decide the extent to which the Natural Gas Act reinforces or abrogates the private contract rights here in controversy. The fact that Cities Service sues in contract or quasi-contract, not the ultimate validity of its arguments, is decisive.

Nor does § 22 of the Natural Gas Act help petitioners. "Exclusive jurisdiction" is given the federal courts but it is "exclusive" only for suits that may be brought in the federal courts. Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded. This was settled long ago in *Pratt v. Paris Gaslight & Coke Co.*, 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458, a case involving a grant of exclusive jurisdiction to the federal courts in all cases arising under the patent laws. Suit was brought in a state court on a common-law contract claim. The complaint contained no mention of a patent, but the invalidity of certain patents was set up in defense. In response to the argument that this deprived the state courts of jurisdiction, the Court said:

"Section 711 [the jurisdictional provision] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of '*cases*' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals." (Emphasis in the original.) 168 U.S. at page 259, 18 S.Ct. at page 64.[2]

---

[2] The foregoing conclusions are not affected by want of explicit limitation to jurisdiction "arising under" the Natural Gas Act. Such

limitation is clearly implied, as the authoritative Committee Reports indicate. "This section [referring to § 22] imposes appropriate jurisdiction upon the courts of the United States over cases arising under the act." H.R.Rep. No. 709, 75th Cong., 1st Sess., p. 9; S.Rep. No. 1162, 75th Cong., 1st Sess., p. 7.

366 U.S. at 662–65 & n. 2, 81 S.Ct. at 1307–08 & n. 2.

To start with, our reliance upon *Pan American* is not unwarranted in light of Congressional debates indicating that: 1) the Natural Gas Act was intended to operate similar to the Federal Power Act; 2) the Natural Gas Act was patterned after the Federal Power Act in the regulatory area; 3) the Natural Gas Act merely contained standard provisions which had been incorporated into other regulatory legislation, including the Federal Power Act; and 4) Congress intended to establish a fairly common rate making and regulatory scheme for interstate sales of natural gas similar to the Federal Power Act. See *City of Gainesville v. Florida Power & Light Co.*, 488 F.Supp. 1258, 1277–78 (S.D.Fla.1980).

Further, Congress created the Federal Power Commission (now the Federal Energy Regulatory Commission) to carry out the task of establishing federal regulations over most wholesale transactions of electric and gas utilities engaged in interstate commerce. See Federal Power Act of 1935 (Title II of the Public Utility Act of 1935), 49 Stat. 838–863; Natural Gas Act of 1938, 52 Stat. 821; see also *Arkansas Electric Cooperative Corp. v. Arkansas Public Service Commission*, 461 U.S. 375, 378–79, 103 S.Ct. 1905, 1909, 76 L.Ed.2d 1 (1983).

The similarity continues in that the jurisdictional provisions of the Natural Gas Act (cited in relevant part in footnote 1, supra) and the Federal Power Act (16 U.S.C. § 825p[3]) are *identical.*[4]

**3.** § 825p reads:

The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. Any criminal proceeding

**4.** See note 4 on page 113.

Accordingly, because it is well-established that the Natural Gas Act does not create a cause of action that completely preempts state contract actions, see *Pan American,* supra; *Oliver v. Trunkline Gas Co.,* 796 F.2d 86, 87 n. 1 (5th Cir.1986), we see no reason either in law or logic advising against the use of case law interpreting the same to give us insight into the breadth Congress intended to imbue in the "exclusivity" clause of § 825p of the Federal Power Act.

*Pan American* speaks in terms of "exclusivity" of federal courts vis-a-vis state courts turning upon "the particular claims a suitor makes in a state court—[i.e.,] ... how he casts his action. Since 'the party who brings a suit is master to decide what law he will rely upon.'" 366 U.S. at

shall be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this chapter.
June 10, 1920, c. 285, § 317, as added Aug. 26, 1935, c. 687, Title II, § 213, 49 Stat. 862, and amended June 25, 1936, c. 804, 49 Stat. 1921; June 25, 1948, c. 646, § 32(b), 62 Stat. 991; May 24, 1949, c. 139, § 127, 63 Stat. 107.
Identical language also appears in the jurisdictional proviso of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), and as to § 78aa's non-preemption status see *McMahon Chevrolet, Inc. v. Davis,* 392 F.Supp. 322 (S.D.Texas 1975); *Cleveland Electric Illuminating Co. v. City of Cleveland,* 50 Ohio App.2d 275, 363 N.E.2d 759 (1976), cert. denied, 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

4. As has been stated in another context, which we find informative here, the fact that the language is repeated *in haec verba* in the provisions of the two statutes could "'indicate[ ] that it does not reflect any considered judgment about what other remedies were ... available or continue[d] to be available under any particular statute.'" *International Paper Co. v. Ouellette, et al.,* —— U.S. ——, —— n. 14, 107 S.Ct. 805, 812 n. 14, 93 L.Ed.2d 883 (1987).
Thus, we are presented with no viable reason counselling against our use of case law interpreting 15 U.S.C. § 717u of the Natural Gas Act to illuminate the manner in which § 825p should be interpreted.

662, 81 S.Ct. at 1307. This is so despite the fact there may be a scheme of federal law in existence upon which a plaintiff's cause of action may be based but is eschewed for state grounds for the pursuit of one's cause of action.[5] This position has been embraced in *Airco Alloys Division, Airco, Inc. v. Niagara Mohawk Power Corp.*, 65 A.D.2d 378, 411 N.Y.S.2d 460 (1978) and *Cleveland Electric Illuminating Co. v. City of Cleveland*, 50 Ohio App.2d 275, 363 N.E.2d 759 (1976), cert. denied, 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). Both deal with, inter alia, the presentment of contract claims in state courts, despite the assertion of § 825p as a ground for preempting state court jurisdiction involving electric utilities.[6]

Instantly, under the precepts referred to in *Pan American* and followed in *Airco* and *City of Cleveland*, we look to the complaint filed to discern the nature of the plaintiffs' cause of action. We learn therefrom that the plaintiffs ground their complaint on traditional common law notions of negligence and the alleged maintenance of a dangerous instrumentality by the appellant on its property. See Prosser, Law of Torts, §§ 30, 78 (4th Ed. 1975).

No assertion is made by the plaintiffs concerning the violation of any federal law, rule, regulation or order, nor is the cause of action brought to enforce any liability or duty

**5.** See Note, Federal Preemption, Removal Jurisdiction and the Well-Pleaded Complaint Rule, 51 U.Chi.L.Rev. 634, 664–66 (1984).

**6.** See *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (Petitioner failed to state a federally cognizable cause of action; District Court had no jurisdiction over suit); *Mississippi Power & Light Co. v. Federal Power Commission*, 131 F.2d 148, 150 (5th Cir.1942) (No violation of Federal Power Act or order or regulation of Federal Energy Regulatory Commission precluded securement of federal jurisdiction); *Allegheny Electric Co-op., Inc. v. Power Authority of State of New York*, 630 F.Supp. 1271 (S.D.N.Y.1986) (§ 825p not applicable because no order of Federal Energy Regulatory Commission was at issue); *Louisiana Power & Light Co. v. Ackel*, 616 F.Supp. 445, 447 (M.D.La.1985) (semble) and contrast with *Clark v. Gulf Oil Corp.*, 570 F.2d 1138, 1143 (3rd Cir.1978) (Plaintiff's alleged injuries flowing from violation of Natural Gas Act); *City of Cleveland v. The Cleveland Electric Illuminating Co.*, 570 F.2d 123, 128 (6th Cir.1978) (Counterclaim based on order of the Federal Power Act and, thus, § 825p was triggered).

created by or to enjoin any violation of any federal law. See *Mississippi Power & Light Co. v. Federal Power Commission,* 131 F.2d 148, 150 (5th Cir.1942); *Louisiana Power & Light Co. v. Ackel,* 616 F.Supp. 445, 447 (M.D.La. 1985); *State of California, etc. .v. The Oroville-Wyandotte Irrigation District,* 411 F.Supp. 361, 367 (E.D.Calif.1975). And, the appellant's citation to 16 U.S.C. § 803(c) is not helpful to its case. It merely makes reference to a licensee (such as the appellant) being "liable for all damages occasioned to the property of others by the construction, maintenance or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor." [7]

There is no mention in § 803(c) of any subject matter which would lead this Court to conclude that a complainant would be foreclosed from instituting suit in state court, on accepted common law principles, solely because of the party-defendant being under the auspices of a federal agency armed to function by federal law.

The logic proffered by the appellant is tenuous at best, and does not need repeated here, except to the extent that uniformity of application of the Federal Power Act and its attendant provisions will not be jeopardized since recourse is always available to parties aggrieved by adverse state-court decisions of federal questions by seeking redress before the United States Supreme Court, if one so desires. See *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Pan American,* supra.

Unlike the Labor Management Relations Act (29 U.S.C. § 185), we do not perceive a congressional intention to explicitly grant federal courts exclusive, preemptive jurisdiction over cases involving suits against utilities regulated by the Federal Energy Regulatory Commission via the Federal Power Act. See *Gulf Offshore Co. v. Mobil Oil*

7.  The Act of June 10, 1920, c. 285, § 10, 41 Stat. 1068, as amended, 16 U.S.C. § 803(c).

*Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (Texas courts had jurisdiction over personal injury action arising under the Outer Continental Shelf Land Act, notwithstanding Congress' explicit grant of exclusive jurisdiction to federal courts over cases arising under OCSLA) and contrast with *Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (State common law claims are not only preempted by Employee Retirement Income Security Act of 1974, but it is also displaced by ERISA's civil enforcement provision to the extent that complaints filed in state courts purporting to plead such state common law causes of action are removable to federal court under 28 U.S.C. § 1441(b)).

In light of the aforesaid, we hold that the state courts of Pennsylvania do have jurisdiction to hear and decide the claims that the plaintiffs have formulated.

It is so ordered. Jurisdiction is relinquished.[8]

---

**8.** The appellant raises other issues in its brief to us which were not certified for our review, and they do not appear to have been presented to the court below. Accordingly, we need not address their merits. See Pa.R.App.P. 302(a).