**ALLEGHENY ELECTRIC COOPERATIVE, INC.,**
Plaintiff,

v.

**POWER AUTHORITY OF the STATE OF NEW YORK, Defendant.**

No. 85 Civ. 5081 (JMC).

United States District Court,
S.D. New York.

March 27, 1986.

Putney, Twombly, Hall & Hirson, New York City (Frances E. Lake, Jr., of counsel), for plaintiff Allegheny Elec. Co-op., Inc.

Charles M. Pratt, New York City (Arthur T. Cambouris and Wendy M. Lane, of counsel), for defendant Power Authority of the State of N.Y.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendant Power Authority of the State of New York's ["PASNY's"] motion to dismiss the complaint is granted. Fed.R. Civ.P. 12(b)(1).

## FACTS

Plaintiff Allegheny Electric Cooperative, Inc. ["Allegheny"] is a nonprofit corporation that purchases or generates and then redistributes electrical power to distribution cooperatives in Pennsylvania. It is also the designated bargaining agent for Pennsylvania public power systems in their dealings with PASNY concerning the distribution of power from PASNY's Niagara Falls project. Defendant is a New York State agency that is involved in the generation, sale and transmission of electric power and energy.

On January 30, 1958, the Federal Power Commission issued a license to PASNY for the Niagara Project No. 2216 ["Niagara Project"]. The marketing of power from this project is governed by the Niagara Redevelopment Act ["NRA"], 16 U.S.C.

§ 836, pursuant to which PASNY is required to allocate an amount of "preference power" equal to 50% of the project power to "public bodies and nonprofit cooperatives within economic transmission distance." 16 U.S.C. § 836(b)(1). Additionally, the NRA requires that PASNY provide up to 20% of this preference power to similar entities in neighboring states. 16 U.S.C. § 836(b)(2).[1]

Allegheny brings this claim pursuant to the NRA, as well as the Federal Power Act ["FPA"], 16 U.S.C. § 791a, 825p, and general federal jurisdictional statutes, 28 U.S.C. §§ 1651, 1337. It claims that the most recent contracts allocating power among the various "neighboring states" are based upon erroneous determinations. A brief chronology of events is helpful in understanding the nature of plaintiff's complaint.

In a series of five-year contracts beginning in 1966, Pennsylvania received an allocation of 86 megawatts of "firm" power and 21 megawatts of "peaking" power from the Niagara project. As the oil crisis inflated energy prices in the 1970s, the inexpensive hydroelectric power provided by the Niagara project became more sought after. *See Power Authority v. F.E.R.C.*, 743 F.2d 93, 100 (2d Cir.1984) (detailing history of NRA). In 1980 Massa-chusetts, Connecticut, Ohio and Vermont all filed complaints with the Federal Energy Regulatory Commission ["FERC"], seeking greater allocations of the Niagara power. The administrative review procedure moved at a snail's pace so that FERC did not issue its opinion until March 27, 1985, three months before the 1980–1985 contracts were to expire. *See Municipal Wholesale Elec. Co. v. Power Authority*, 30 FERC ¶ 61,323 (Mar. 27, 1985) ["Opinion No. 229"]. Meanwhile negotiations for the 1985–1990 contracts had proceeded and on the same date PASNY submitted to Governor Mario Cuomo of New York State the proposed contracts for the new term. The allocation for Pennsylvania under these proposed calculations would have remained essentially the same as in previous years. On approximately June 27, 1985, Allegheny received notice that PASNY had recalculated the contracts to conform with FERC's Opinion No. 229 and designated an interim allocation for Pennsylvania of 26.6 megawatts of "firm" power and 5.6 megawatts of "peaking" power—an amount significantly less than that previously allocated to the state. This interim allocation took effect on July 1, 1985.

On June 29, 1985 Allegheny sought a temporary restraining order before Judge Mary J. Lowe of this district, who was then

---

1. Section 836 reads as follows, in pertinent part:

(b) The Federal Energy Regulatory Commission shall include among the licensing conditions, in addition to those deemed necessary and required under the terms of the Federal Power Act [16 U.S.C.A. § 791a et seq.], the following:

(1) In order to assure that at least 50 per centum of the project power shall be available for sale and distribution primarily for the benefit of the people as consumers, particularly domestic and rural consumers, to whom such power shall be made available at the lowest rates reasonably possible and in such manner as to encourage the widest possible use, the licensee in disposing of 50 per centum of the project power shall give preference and priority to public bodies and nonprofit cooperatives within economic transmission distance. In any case in which project power subject to the preference provisions of this paragraph is sold to utility companies organized and administered for profit, the licensee shall make flexible arrangements and con-tracts providing for the withdrawal upon reasonable notice and fair terms of enough power to meet the reasonably foreseeable needs of the preference customers.

(2) The licensee shall make a reasonable portion of the project power subject to the preference provisions of paragraph (1) of this subsection available for use within reasonable economic transmission distance in neighboring States, but this paragraph shall not be construed to require more than 20 per centum of the project power subject to such preference provisions to be made available for use in such States. The licensee shall cooperate with the appropriate agencies in such States to insure compliance with this requirement. In the event of disagreement between the licensee and the power-marketing agencies of any of such States, the Federal Energy Regulatory Commission may, after public hearings, determine and fix the applicable portion of power to be made available and the terms applicable thereto.

sitting in Part I. She denied the motion on the grounds that there was no irreparable harm and appeared to be no jurisdiction. Plaintiff then filed this complaint, identical to that attached to the motion before Judge Lowe.

Shortly thereafter FERC issued an opinion upon reconsideration, *Massachusetts Municipal Wholesale Elec. Co. v. Power Authority*, 32 FERC ¶ 61,194 (July 30, 1985) ["Opinion 229A"]. FERC essentially reaffirmed its prior opinion, clarifying one section not relevant to this action. On August 1, 1985, Allegheny filed a petition for review of the FERC decision in the United States Court of Appeals for the District of Columbia Circuit.

Allegheny claims in the instant action that in calculating the 1985–1990 contracts, PASNY overestimated the number of customers in Ohio and Vermont who are served by preference entities that have "the capability of receiving power" from the Niagara project. Specifically, Allegheny alleges that the Ohio interim allocation wrongly included about 200,000 customers of municipal systems who cannot receive Niagara power because no transmissions arrangements have been made and another 200,000 who would incur substantial economic penalties under their existing power supply contracts if they took power from PASNY.

Additionally, Allegheny alleges that 175,000 of the 225,000 Vermont customers actually receive power from privately owned utility companies. In Opinion 229, FERC specifically disqualified the Vermont Department of Public Service ["DPS"] from eligibility to receive Niagara preference power to the extent that it sold its preference power to private utilities. FERC based its ruling on its conclusion that the NRA required a "public body capable of receiving preference power" to distribute that power directly to consumers rather than through private utility companies. On April 23, 1985, however, between the issuance of Opinions 229 and 229A, the Vermont legislature passed a bill that authorizes the DPS to distribute Niagara preference power directly to the consumers. *See* Vt.Stat.Ann. tit. 30, § 212a.[2] FERC declined to rule upon this new arrangement in Opinion 229A. Instead, it stated that it would "leave it to PASNY in the first instance to determine the legality of such arrangements. We will exercise our responsibilities to resolve any disputes as they arise through the complaint process." Opinion 229A, 32 FERC at ¶ 61,451 n. 12. Accordingly, FERC has not ruled upon the current interim allocations. Plaintiff now argues that the new Vermont scheme is still a "sham" operation such that much of the preference power it receives is still going through private utilities.[3] Plaintiff seeks an injunction against implementation of the interim allocations to the extent that Ohio and Vermont receive more power than that actually distributed to eligible consumers.

### DISCUSSION

Defendant moves for dismissal on the ground that FERC has exclusive jurisdiction over disputes arising out of the allocation of power to neighboring states. Plaintiff contends that the federal court has concurrent jurisdiction and the case presents only a question of law, which can be decided by the federal court without recourse to any specialized knowledge of an administrative agency. It also relies upon the enforcement provision of the FPA, 16 U.S.C. § 825p, which gives federal district courts the authority to enforce FERC's orders.

The NRA states that in the event of disagreements between PASNY and the

---

**2.** This legislation reads:
   The department of public service ... is hereby authorized to distribute and sell at retail electrical energy purchased from the Niagara and St. Lawrence power projects directly to all rural and domestic consumers of electricity in Vermont by entering into agreements with Vermont electric utilities that include, without limitations, the leasing of facilities and the provision of services to the department to distribute such electrical energy.

**3.** *See* Memorandum in Opposition to Motion, 85 Civ. 5081 (JMC) (filed Aug. 29, 1985).

neighboring states, FERC "may, after public hearings, determine and fix the applicable portion of power to be made available and terms applicable thereto." 16 U.S.C. § 836(b)(2). In addition, the FPA authorizes district courts to enforce orders by FERC, see 16 U.S.C. § 825p, and gives federal courts of appeals the power to review decisions by FERC, see 16 U.S.C. § 825*l*(b). Thus, in enacting the NRA and the FPA, Congress set up a system for dealing with disagreements concerning the allocation of power to neighboring states. Moreover, the House Report on the version of the bill that was eventually enacted into law emphasizes that "[t]here is no disagreement that project power should be made available to neighboring States, subject to the determination of disputes by" FERC's predecessor, the Federal Power Commission. H.R.Rep. No. 862, 85th Cong., 1st Sess. 9, *reprinted in* 1957 U.S.Code Cong. & Ad.News 1585, 1593.

Both the language of the statute and the legislative history, reveal that Congress envisioned that disputes over the allocation of power among the neighboring states would be determined first by FERC. Plaintiff, however, contends that the federal district courts have concurrent jurisdiction over the issues raised in this case. First, it argues that the only issue before the Court is whether the Vermont DPS is a "public body" pursuant to 16 U.S.C. § 836(b)(1), a subsection that does not explicitly give jurisdiction over disputes to FERC.[4] Plaintiff argues that because the term "public body" is found in this more general subsection, which contains no specific delegation of power to FERC, it is somehow distinguishable from issues arising under 16 U.S.C. § 836(b)(2), which does delegate jurisdiction to FERC. Plaintiff also suggests that even if FERC has jurisdiction to decide the issue of whether the Vermont DPS is a public body, the case presents merely a question of statutory interpretation which can be decided separately by the Court by virtue of its concurrent jurisdiction. In making this contention, plaintiff relies upon the Court's general jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1337.

The threshold issue is whether this Court has jurisdiction over this action. It is well established that the courts of appeals have exclusive jurisdiction to review orders of FERC, subject to further review by the Supreme Court upon certiorari or certification. *See* 16 U.S.C. § 825*l*(b); *City of Takoma v. Taxpayers,* 357 U.S. 320, 336, 78 S.Ct. 1209, 1218–19, 2 L.Ed.2d 1345 (1958). This case, however, does not involve review of a FERC order because FERC has issued no decision with respect to the interim allocations that went into effect on July 1, 1985 and which are the subject of this dispute. Plaintiff seeks, rather, to establish that the district court has initial jurisdiction so as to permit a litigant to circumvent the statutory scheme for administrative and judicial review.

There is a general hesitancy to foreclose access to a judicial forum absent a specific preclusionary statute. *Compare Weinberger v. Salfi,* 422 U.S. 749, 756–67, 95 S.Ct. 2457, 2462–68, 45 L.Ed.2d 522 (1975) (holding that specifically worded section of Social Security Act barred district court from entertaining initial claims for benefits) *with Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967) ("only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review") *and Central Hudson Gas & Elec. Corp. v. United States E.P.A.,* 587 F.2d 549, 555–57 (2d Cir.1978). No section of the NRA or FPA precludes district court jurisdiction. Moreover, the phrasing of 16 U.S.C. § 836(b)(2) is permissive: "In the event of a disagreement between the licensee and the power-marketing agencies of any such States the [FERC] *may,* after public hearing, determine and fix the applicable portion of power to be made available thereto." (emphasis added). It appears, therefore, that even though federal district courts have no jurisdiction to review a FERC decision, they do have the power to entertain parallel proceedings as an initial

---

4. *See* note 1, *supra.*

decision maker, regardless of whether the action arises under section 836(b)(1) or (b)(2). *Cf. Village of Barton*, No. 84–314 (S.D.Vt. May 10, 1985) (assuming sub silencio that district court has initial jurisdiction over Vermont issue).

■ Assuming this Court does have jurisdiction, however, it must nonetheless decline to hear the case in deference to FERC's primary jurisdiction over the issues raised. *See Nader v. Allegheny Airlines*, 426 U.S. 290, 305–06, 96 S.Ct. 1978, 1987–88, 48 L.Ed.2d 643 (1976); *Board of Educ. v. Harris*, 622 F.2d 599, 607 (2d Cir.1979), *cert. denied sub nom. Hufstedler v. Board of Educ.*, 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981). Primary jurisdiction is a doctrine that "governs the question of whether a particular issue or claim is 'initially cognizable' in a court action or must be presented to an administrative agency for determination in the first instance." *State of Conn. v. United States Environmental Protection Agency*, 656 F.2d 902, 905 (2d Cir.1981). A court having concurrent jurisdiction with an administrative agency may rely upon the doctrine of primary jurisdiction to return the case to the agency "when faced with an issue which calls into question an area of special expertise of an agency." *American Trucking Ass'ns, Inc. v. I.C.C.*, 682 F.2d 487, 491 (5th Cir.1982); *see also United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956); *Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952).

The gravamen of the complaint concerns the allocation of power among New York's neighboring states, a question that the statute specifically delegates to FERC for review. At stake here are no constitutional claims that would permit a litigant to obtain district court review of his claim "regardless of the fact that an administrative remedy does exist." *See United States v. One Tintoretto Painting Entitled The Holy Family With Saint Catherine and Honored Donor*, 691 F.2d 603, 608 (2d Cir.1982). It is undisputed that questions of fact belong initially in FERC's domain. The claim with respect to the Ohio allocation is one of fact and the Vermont question mixes fact and law. Moreover, to determine whether the Vermont DPS is now a "public body" requires interpretation of a specialized statute, which is more approximately left to FERC in the first instance. *See* 3 K. Davis § 19.01, 274 (1982 Supp.). The specific legal question posed is whether the DPS, as newly empowered, is now a "public body" or remains a mere paper agency that simply passes power on to private utilities and legitimate "public bodies." Although the Second Circuit has stated that a "public body" may resell preference power to private utilities, *see Power Authority v. FERC*, 743 F.2d at 104, FERC ruled in Opinions 229 and 229A that the Vermont DPS was a mere bargaining agent, not a "public body" because it had authority only to allocate power to other distribution units without being "capable of selling and distributing power directly to consumers of electricity at retail," 32 FERC at ¶ 61,444. As a result, Vermont was found not to be entitled to preference power to the extent that DPS was passing it on to private utilities. FERC also ruled, however, that a "public body" need not own a distribution system and postponed decision on whether Vermont's new licensing arrangement with private utilities involves DPS in sufficient distribution activity to qualify it as a "public body." *See* 32 FERC at ¶ 61,451 n. 12. Even assuming the parties were to agree upon stipulated facts, this is precisely the kind of fact-dependent, policy-based decision best decided in the context of agency review before reaching the judicial arena. This is particularly true because FERC has specifically indicated that it will entertain the instant complaint pursuant to the normal administrative procedures. FERC should have a first chance to rule on the new Vermont legislation, as well as the adequacy of the Ohio allocation.

■ The question remains whether the Court will decline jurisdiction and dismiss the action or retain jurisdiction. *See Far East Conf.*, 342 U.S. at 576, 72 S.Ct. at 495. The appropriate forum for judicial review of these issues is in the court of appeals, following a ruling by FERC. *See* 16 U.S.C.

§ 825*l*(b). If FERC's decision is favorable to plaintiffs, enforcement may be sought pursuant to 16 U.S.C. § 825p. Accordingly, the Court declines to exercise or retain jurisdiction over this action.

 Plaintiff argues in the alternative that this Court has jurisdiction enforce FERC's rulings in Opinions 229 and 229A. It claims that PASNY has violated the "principles" enunciated by FERC. Section 825p is an enforcement section designed to address the violation of specific orders delineating rights and duties. *See Mississippi Power & Light Co. v. Federal Power Commission,* 131 F.2d 148, 150 (5th Cir. 1942). FERC has issued no such specific orders with respect to the factual situations at issue in this action. Thus, reliance upon section 825p is misplaced.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. Fed.R.Civ.P. 12(b)(1). The Clerk of the Court is directed to enter judgment for the defendant and dismiss the complaint.

SO ORDERED.