**WILLISTON BASIN INTERSTATE PIPELINE CO., et al., Plaintiffs,**

v.

**Robert L. BURFORD, et al., Defendants.**

**Civ. A. No. 87–1757.**

United States District Court, District of Columbia.

Sept. 19, 1989.

Robert T. Hall, III, Reid & Priest, Washington, D.C., for plaintiffs.

Alfred Ghiorzi and W.J. Haugrud, U.S. Dept. of Justice, John Estes and Jerome Feit, FERC, Washington, D.C., for defendants.

J. Paul Douglas, Williamsburg, Va., for ARCO.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Williston Basin Interstate Pipeline Company (Williston) is an interstate natural gas pipeline company that operates in North Dakota, Wyoming, South Dakota, and Montana. Williston is a wholly owned subsidiary of MDU Resources Group, Inc. (MDU). The parties will be referred to collectively as Williston throughout. The defendants originally named are the Department of the Interior (Interior), two of its agencies, the Minerals Management Services (MMS) and, its successor, the Bureau of Land Management (BLM), the Federal Energy Regulatory Commission (FERC). ARCO Gas and Oil Company (ARCO), from whom plaintiffs are contractually obligated to purchase natural gas at issue, was permitted to intervene and is a chief party in interest. Plaintiffs allege that administrative proceedings at the "jurisdictional agency" level (in this case, the MMS of the Department of Interior because only federal lands are involved) were held without actual notice to them in violation of the Fifth Amendment.[1] Williston seeks a declaration which would invalidate two final FERC *administrative* orders, Nos. 338 and 338–A, which affirmed the MMS's recommendations, granting ARCO the right to raise its prices.

---

1. Although the agency published notices of the June 30, 1982 meeting between ARCO and MMS, Williston submitted affidavits that support its contentions that it did not receive actual notice of those hearings and did not read the newspapers in which the notice was published. This submission is controverted by ARCO.

Williston has filed a motion for summary judgment and defendants FERC and ARCO motions to dismiss for lack of subject matter jurisdiction. The issues have been extensively briefed. We grant defendants' motions.

*The Statutory Background*

In response to a "growing demand for natural gas and rising prices for energy generally," *Williams Natural Gas Co. v. FERC*, 872 F.2d 438, 440 (D.C.Cir.1989), Congress enacted the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. §§ 3301–3432 (1982).[2] The enactment of NGPA was part of a comprehensive plan to change "the method of pricing natural gas produced in the United States." *Public Services Commission of the State of New York v. Mid–Louisiana Gas Co.*, 463 U.S. 319, 322, 103 S.Ct. 3024, 3027, 77 L.Ed.2d 668 (1983). Under NGPA, FERC was given the authority to establish incentive prices for natural gas that is riskier (and more expensive) to produce. Included in the "risky" category is gas produced from certain types of geological formations known as "tight formations," which are layers of rocks "cemented together in a manner that greatly hinders the flow of any gas through the rock." *Williams Natural Gas Co.*, 872 F.2d at 441 n. 1 (citing Order No. 99, "Regulations Covering High–Cost Natural Gas Produced From Tight Formations," 45 Fed.Reg. 56,034 (April 22, 1980), *reh'g denied*, Order No. 99–A, 45 Fed.Reg. 71,563 (1980), *aff'd Pennzoil v. FERC*, 671 F.2d 119 (5th Cir. 1982)).

NGPA established procedures for determining whether the gas originates in a tight formation. First, the producer of the gas, in this instance ARCO, must apply to the state or federal agency which has jurisdiction over the area that holds the natural gas. The jurisdictional agency (in this case, the MMS) makes the initial determination "whether specific gas satisfies the factual criteria for a particular category of incentive-priced gas." *Williston Basin Interstate Pipeline Co. v. FERC*, 816 F.2d 777, 780 (D.C.Cir.1987), *reh'g denied*, No. 85–1835, *en banc* (June 30, 1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988). FERC then reviews the jurisdictional agency's findings "to ensure that they are supported by substantial evidence." *Id.* If FERC reverses the jurisdictional agency's determination, judicial review is available in the Court of Appeals. However, if FERC affirms the jurisdictional agency's findings, no judicial review is permitted under Section 503(b)(4). *Id.* at 783. For judicial review by the Court of Appeals, the distinction between reversal and affirmance of a jurisdictional agency's initial findings is contained in Section 503(c)(4) of the NGPA, which states that the jurisdictional agency's determinations "shall not be subject to judicial review under any Federal or State law ... except as provided in subsection [503] (b) of this section." Subsection (b) "in turn limits judicial review to cases in which [FERC] reverses the sub-agency decision or remands the matter for further consideration." *Mesa Petroleum Co. v. FERC*, 688 F.2d 1014, 1015 (5th Cir.1982).

*The Present Controversy*

The formations holding the gas in question underlie a number of Indian Reservations in Wyoming. These lands were formerly within the jurisdiction of the MMS.[3] In 1982 ARCO invoked rulemaking procedures under Section 501 with respect to this land. MMS held a hearing on June 30, 1982, purportedly without notice to plaintiffs.[4] MMS, through the Department of Interior, filed a recommendation with FERC that the area qualified as a tight rock formation. In November 1982 FERC issued a Notice of Proposed Rulemaking on the MMS recommendation in the *Federal Register*. 47 Fed.Reg. 53,243, 53,742

---

**2.** Pub.L. 95–621, Stat. 3351 (1978).

**3.** BLM succeeded MMS under orders of the Secretary of the Department of the Interior. *See* Secretary of the Interior's Order No. 3087, Amendment No. 1, 48 Fed.Reg. 8983 (1983).

**4.** Plaintiffs state that the notices were given "pursuant to Wyoming Statutes Annotated Section 30–5111(d) which provide[ ], in substance that ... notice of all proceedings before it [shall be given] through one publication in a newspaper of general circulation" in the affected counties. Complaint at 13.

(1982). In response plaintiffs filed extensive comments which were forwarded to MMS. MMS considered and rejected plaintiffs' evidence, but forwarded its findings and recommendation to FERC. In October 1983 FERC rejected plaintiffs' evidence and contentions, found that the MMS recommendation was supported by substantial evidence, and issued Order No. 338. Subsequently plaintiffs petitioned FERC for a new hearing, a stay of Order No. 338, and a request to reopen the entire matter. FERC denied all plaintiffs' petitions in Order No. 338–A.

Plaintiff appealed both orders to the United States Court of Appeals for this Circuit. The Court of Appeals found FERC's affirmance of BLM's findings unreviewable under § 503(b), *Williston*, 816 F.2d at 783, and dismissed the case for lack of jurisdiction. Williston filed the above-referenced complaint, this time on the ground that the June 30, 1982 hearing before the jurisdictional agency was held without actual notice to Williston. Plaintiffs assert jurisdiction under 28 U.S.C. §§ 1332, 2201, 2202. Plaintiffs seek a declaratory judgment that the Interior's recommendation designating the land as "tight formations" is invalid and void under the due process clause of the Fifth Amendment. Plaintiffs' constitutional claim was never raised during the long and arduous appeals process and therefore could not provide a predicate for the appellate court's assertion of jurisdiction.[5]

*Analysis*

The law of this Circuit provides that when "a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 72 (D.C.Cir.1984) (emphasis supplied). Therefore, as an initial matter, the court must determine whether NGPA commits review of MMS and FERC's actions, including alleged constitutional violations, to the Court of Appeals. *TRAC*, 750 F.2d at 74; *see Ohio Edison Co. v. Zech*, 701 F.Supp. 4, 6 (D.D.C.1988). The Court of Appeals itself found that it does not have jurisdiction to hear appeals from FERC's summary affirmance of the jurisdictional agency's findings. *Williston*, 816 F.2d at 780. The Court of Appeals interpreted NGPA, specifically, section 503(b), as limiting judicial review to only those cases in which FERC reverses a sub-agency decision. The Court of Appeals was categorical; "it is undisputed that the NGPA precludes an aggrieved person from appealing the grant of a 'high-cost natural gas' designation, when, under section 593, FERC has affirmed the jurisdictional agency recommendations." *Williston*, 816 F.2d at 782." *See also Mesa Petroleum Co. v. F.E.R.C.*, 688 F.2d 1014, 1015 (5th Cir.1982) (holding that congressional intent on this matter was crystal clear that Congress intended to provide for review of sub-agency orders *only* when FERC and the sub-agency reach contrary conclusions).

The constitutional claims now asserted in the present action were not before the Court of Appeals and were not considered. The Court of Appeals ruled only that its appellate jurisdiction did not extend to FERC's affirmance of sub-agency decisions. This limitation of the appellate court's otherwise exclusive jurisdiction does not open the doors to district court authority to hear plaintiffs' constitutional claims under general jurisdiction principles. Plaintiffs' assumption that the absence of jurisdiction in the United States Court of Appeals on a particular issue *ipso facto* creates jurisdiction in the district court is without merit. This is because it ignores a basic constitutional tenet that Article III courts are courts of limited jurisdiction, and "lack the power to presume the existence of jurisdiction in order to dispose of a case on ... other grounds." *TRAC*, 750 F.2d at 75 (citing *Tuck v. Pan American Health Organization*, 668 F.2d 547, 549 (D.C.Cir.1981). In keeping with the principle, when a statute commits broad review

---

**5.** Plaintiffs briefly raised the due process claim in the first filing of their Petition for Rehearing and Suggestion for Rehearing *En Banc.* That claim was, however, withdrawn before the Court of Appeals could consider it.

of agency action to a United States Court of Appeals, part two of the *TRAC* test requires this court to determine whether a finding of district court jurisdiction would have an effect on the future jurisdiction of the Court of Appeals. *Ohio Edison,* 701 F.Supp. at 6. Although NGPA does not specifically preclude district court jurisdiction, the court wishes to avoid "playing jurisdictional badminton" with the Court of Appeals. *NRDC v. EPA,* 512 F.2d 1351, 1361 (D.C.Cir.1975) (Wright, J., concurring and dissenting). We recognize that "there is a general hesitancy to foreclose access to a judicial forum absent a specific preclusionary statute," *Allegheny Electric v. Power Authority of State of New York,* 630 F.Supp. 1271, 1274 (S.D.N.Y.1986), but note that the Court of Appeals' jurisdiction in FERC cases is extremely broad. In summary, the United States Courts of Appeals have exclusive jurisdiction to review all final rules, regulations and orders of FERC, with the exception of those orders as to which Congress has denied judicial review. The orders at issue are just such orders, and the fact that they cannot be reviewed does not derogate from the court's otherwise exclusive jurisdiction in FERC cases.

It is, therefore,

ORDERED that the defendants' motions to dismiss as to all parties are granted because of lack of jurisdiction.