598 A.2d 290

**John H. ENGLE, William R. Engle, William C. Engle, t/d/b/a Engle's Holiday Harbor, a Partnership, and as Representative of a Class, Appellants,**

**v.**

**WEST PENN POWER COMPANY, a Corporation.**

**John H. ENGLE, William R. Engle, William C. Engle, t/d/b/a Engle's Holiday Harbor, A Partnership, and as Representative of a Class**

**v.**

**WEST PENN POWER COMPANY, a Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued April 23, 1991.

Filed Sept. 9, 1991.

Reargument Denied Nov. 4, 1991.

464

Brian W. Ashbaugh, Pittsburgh, for appellant (at 1558) and appellee (at 1449).

C. James Zeszutek, Pittsburgh, for appellant (at 1449) and appellee (at 1558).

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

ROWLEY, President Judge:

This action has its origin in the "Election Day Flood" of November 3–6, 1985. Appellants John H. Engle, William R. Engle, and William C. Engle, t/d/b/a Engle's Holiday Har-

bor, a partnership, brought the action against West Penn Power Company ("West Penn"), owner and operator of the Lake Lynn Dam on the Cheat River in West Virginia, in an attempt to recover for property damage incurred in the flood. The Engles were certified as representatives of a class consisting of all persons or entities who suffered property damage in Pennsylvania between November 3 and 6, 1985, as a result of West Penn's actions "in obstructing and/or releasing improperly flood waters from the Lake Lynn Dam and/or failing to adequately notify such individuals or entities."

In their appeal, docketed in this Court at No. 1449 Pittsburgh 1990, from the judgment entered on the jury's verdict in favor of West Penn, the Engles contend that the trial court erred in admitting evidence of damages incurred by persons located upstream of the Lake Lynn Dam. In its cross-appeal, docketed in this Court at No. 1558 Pittsburgh 1990, West Penn contends that 1) the trial court erred in permitting trial to proceed on a failure to warn theory, and 2) the trial court lacked subject matter jurisdiction, inasmuch as the Federal Power Act places the present action within the exclusive jurisdiction of the federal district courts. For the reasons set forth below, we affirm the judgment entered in favor of West Penn.

An understanding of the Lake Lynn Dam's location and function is essential to our review. The Cheat River flows north through West Virginia and joins the Monongahela River at Point Marion, Pennsylvania, just north of the Pennsylvania–West Virginia border. The Lake Lynn Dam is located on the Cheat River in West Virginia, several miles south, or upstream, of the point at which the Cheat joins the Monongahela. The Monongahela flows north from Point Marion past Greene and Washington counties to the west and Fayette and Westmoreland counties to the east, eventually combining with the Allegheny River to form the Ohio River at Pittsburgh in Allegheny County. The marina owned by the Engles, the lead plaintiffs in this action, is located in Washington County at the confluence of Ten Mile

Creek and the Monongahela River. All of the members of the plaintiff class are persons or entities located north, or downstream, of Lake Lynn Dam; most of the class members are residents of or entities located in Washington County.

The Lake Lynn Dam is a hydroelectric dam. As Dr. James Romualdi, an expert witness for West Penn, explained at trial, it is a "run of the river dam" (N.T. at 669) rather than a flood control dam. Hydroelectric projects such as the Lake Lynn Dam are federally licensed and regulated. As this Court has explained,

> Congress created the Federal Power Commission (now the Federal Energy Regulatory Commission [FERC]) to carry out the task of establishing federal regulations over most wholesale transactions of electric and gas utilities engaged in interstate commerce. See Federal Power Act of 1935 (Title II of the Public Utility Act of 1935), 49 Stat. 838–863....

*Engle v. West Penn Power Company*, 366 Pa.Super. 104, 112, 530 A.2d 913, 917 (1987), *alloc. denied*, 518 Pa. 626, 541 A.2d 1137 (1988), *cert. denied*, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 527 (1988) (*"Engle I "*) (citations omitted). Among the regulations issued by the FERC was a requirement, now codified at 18 C.F.R. § 12.20 (1982), that an emergency action plan be prepared for facilities such as the Lake Lynn Dam. As will be discussed in Section I, *infra*, the adequacy of the warning plan for the Lake Lynn Dam became a central issue in this case.

Between November 3 and 6, 1985, heavy rainfall caused extensive flooding of the Monongahela. In their two-count class action complaint, filed in the Court of Common Pleas of Washington County on November 21, 1985, appellants alleged that their boating and marina business suffered extensive damage as a result of West Penn's negligence in operating the dam (Count I) or as a result of West Penn's maintenance of a dangerous instrumentality, i.e., the dam (Count II).

In response, West Penn removed appellants' action to the United States District Court for the Western District of Pennsylvania, asserting that the Federal Power Act, 16 U.S.C. §§ 803(c) and 825p, conferred exclusive jurisdiction over appellants' claims on the federal district courts.[1] The Engles then moved to remand the case to the state court. In an order entered March 13, 1986, the federal district court granted the motion to remand, noting in an accompanying opinion that because no federal claims appeared on the face of the Engles' complaint and there was no basis for concluding that the Engles had sought by "artful pleading" to avoid stating a federal claim, West Penn had failed to carry its burden of establishing federal jurisdiction. The court explained that "[w]hen a plaintiff presents a state law claim and a defendant counters by arguing that federal law preempts the state law on which plaintiff relies, the federal claim appears by way of defense and does not provide an adequate basis for removal." *Engle v. West Penn Power Company*, Civil Action No. 85–2924, slip op. at 4 (W.D.Pa. Mar. 13, 1986). The Court added, however, that "[i]n remanding the case, this Court has made no determination on the merits of defendant's contention that plaintiffs' claims

**1.** Section 803(c) states that as a condition of a license granted under the subchapter,

the licensee shall maintain the project works in a condition of repair adequate for the purposes of navigation and for the efficient operation of said works in the development and transmission of power, shall make all necessary renewals and replacements, shall establish and maintain adequate depreciation reserves for such purposes, shall so maintain and operate said works as not to impair navigation, and shall conform to such rules and regulations as the Commission may from time to time prescribe for the protection of life, health, and property. Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor.

Section 825p states in pertinent part as follows:

The District Courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.

are within the exclusive jurisdiction of the federal courts and are, therefore, totally preempted by federal law. Defendant is free to raise these questions in the state court." *Id.* at 7 n. 3.

After the case was remanded to the Court of Common Pleas, West Penn filed preliminary objections in which it renewed its claim that the Court of Common Pleas lacked subject matter jurisdiction over the Engles' action. By order and opinion dated August 4, 1986, the trial court dismissed with prejudice West Penn's preliminary objection as to subject matter jurisdiction. At West Penn's request the trial court certified the interlocutory order pursuant to 42 Pa.C.S. § 702(b), and West Penn then obtained this Court's permission to appeal from the order. In its appeal to this Court, West Penn restated its contention that the action was within the exclusive jurisdiction of the federal courts. This Court held, however, that the courts of this Commonwealth have jurisdiction to hear and decide the claims formulated by appellants, *Engle I, supra,* and the case proceeded in the Court of Common Pleas.

In an order entered October 3, 1988, and amended October 27, 1988, the trial court certified the following plaintiff class:

All individuals or entities who suffered property damage in Pennsylvania between November 3 and November 6, 1985, as the result of the actions of West Penn Power Company, in obstructing and/or releasing improperly flood waters from the Lake Lynn Dam and/or failing to adequately notify such individuals or entities.

In the same order, the trial court stated that the class action would be limited to the following issues:

1. Whether the defendant, West Penn Power Company, during November 1985 was negligent in obstructing and or [sic] releasing improperly flood waters from the Lake Lynn Dam during November 3–6, 1985 and/or in failing to adequately notify the individuals or entities who suffered property damages.

2. Whether the negligent actions, if any, of the West Penn Power Company during the aforesaid period was a proximate cause of property damages suffered by the plaintiffs.

3. Whether the maintenance and operation of the hydro-electric project known as the Lake Lynn Dam, by its [sic] defendant West Penn Power Company, was an abnormally dangerous activity of the defendant, and whether the maintenance of such alleged dangerous instrumentality by the defendant Power Company was a proximate cause of any harm to the plaintiffs.

On September 7, 1988, West Penn filed motions for judgment on the pleadings and for summary judgment. In an order entered August 7, 1989, the trial court denied the motion for judgment on the pleadings and for summary judgment on Count I of the amended complaint, but granted summary judgment in favor of West Penn on Count II, which stated a claim of strict liability resulting from the maintenance of an abnormally dangerous instrumentality.

The case went to trial before a jury in September 1989. At the close of appellants' case West Penn presented a motion for a compulsory nonsuit, contending, *inter alia,* that 1) the plaintiffs had failed to present evidence on the issue of the alleged improper release of water from the dam and 2) they had not included in their complaint a cause of action based on West Penn's alleged failure to warn and had failed to establish that West Penn had a duty to warn. After appellants' counsel conceded that they had not presented sufficient evidence concerning the alleged improper release of water, the court entered a compulsory nonsuit on that issue and ruled that "the case will continue only on the issue of the alleged failure to warn" (N.T. at 286).[2] The jury's verdict was that West Penn was negligent but that West Penn's negligence was not a substantial

**2.** The trial court's actual statement was that "[w]e're going to grant the motion for summary judgment insofar as it relates to the failure to properly release waters from Lake Lynn ..." (N.T. at 285–86). In spite of the reference to "summary judgment," it is clear that the court referred to West Penn's motion for a compulsory nonsuit.

factor in bringing about the harm suffered by the appellants. Appellants' post-trial motions were denied by the trial court in an order entered August 28, 1990, judgment was entered on the verdict, and appellants' timely appeal, as well as West Penn's cross-appeal, followed.

Ordinarily we would address the issues raised by appellants in their direct appeal before considering the issues raised by West Penn in its cross-appeal. However, in its cross-appeal West Penn renews its contention that the courts of this Commonwealth do not have subject matter jurisdiction over the present action. Because a court may not decide the merits of issues that are not properly before it, *see Commonwealth v. Maguigan,* 511 Pa. 112, 120–21, 511 A.2d 1327, 1331 (1986), we turn first to an examination of the issues raised in the cross-appeal.

## I. CROSS–APPEAL AT NO. 1558 PITTSBURGH 1990

### A. Jurisdiction

In its cross-appeal West Penn raises two issues: 1) whether the trial court erred in permitting trial to proceed on a theory of failure to warn, and 2) whether the trial court lacked subject matter jurisdiction over the action. These issues are interrelated in appellant's argument, which is as follows: In their complaint appellants did not plead a cause of action for failure to warn, nor did they refer to such a cause of action when they sought class certification. In addition, as this Court noted in considering the trial court's dismissal of West Penn's preliminary objections,

> [n]o assertion is made by the plaintiffs concerning the violation of any federal law, rule, regulation or order, nor is the cause of action brought to enforce any liability or duty created by or to enjoin any violation of any federal law.

*Engle I,* 366 Pa.Super. at 114–15, 530 A.2d at 918–19.

Nevertheless, West Penn's argument continues, after appellants realized that they would be unable to prove that West Penn had been negligent in the operation of the dam,

they abandoned their negligence action and were permitted to pursue a "failure to warn" theory. The essence of this theory is that under the West Penn Power Emergency Action Plan, which was prepared by West Penn in response to a requirement of the FERC, West Penn assumed a duty to warn and therefore was liable under Section 323 of the Restatement (Second) of Torts for the negligent performance of that duty. By choosing to proceed on this theory, however, appellants brought their action within the exclusive jurisdiction of the federal district courts, since the Federal Power Act, 16 U.S.C. § 825p, states that the federal district courts "shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." Therefore, West Penn contends, "[t]he Engles are in a catch 22; without the Plan, there is no claim; but with the Plan, there is no jurisdiction" (Brief for Appellee at 40).

Appellants contend that the "failure to warn" theory allegedly raised for the first time during trial was in fact the same theory that had been raised in their complaint. They maintain that the FERC required West Penn to develop an Emergency Action Plan to cope with a dam break, not with severe floods unrelated to a failure of the dam, and that they have not challenged the sufficiency of the federally mandated provisions of the Plan. According to appellants, West Penn voluntarily assumed a duty to warn downstream residents of severe floods, and appellants' "failure to warn" theory is based on West Penn's alleged breach of that duty.

In order to resolve the issues raised in West Penn's cross-appeal, we are first required to determine the nature of the failure to warn claim raised by appellants. As West Penn notes, the word "warning" does not appear in appellants' class action complaint. The only statement that could be

construed as a reference to such a claim is the following paragraph in Count I:

24. On or about November 5, 1985, defendant West Penn, *without notice* and without regard to the safety of individuals and property along the Monongahela River, opened gates of the dam to allow the release of water from the dam's lake.

(Emphasis added.) Appellants' amended complaint made no additional references to warnings or notice.

In their motion for class action certification, however, appellants "purport[ed] to represent owners of land and other property who suffered damages as the result of the conduct of West Penn ... in releasing water from Lake Lynn Dam and in failing to properly notify Plaintiffs of its actions" (Motion for Class Action Certification at 1). In addition, they averred that

Defendant West Penn failed to adequately notify residents of Washington County through its failure to include Washington County Emergency Management personnel in the Emergency Action Plan developed by West Penn.

*Id.* In its response to the motion for class action certification, West Penn asserted that

there is no common question of fact or law concerning West Penn's operation of the reservoir and/or *whether West Penn properly notified any of the purported plaintiffs*, because the plaintiffs will not be able to establish that any possible operation of the reservoir or the dam or *the failure to warn* or any other activity by West Penn was a common element of fact or law in the current situation.

West Penn's Opposition to Motion for Class Action Certification at 7 (emphasis added). At a hearing held on April 19, 1988, counsel for appellants made the following statement:

At this particular time, Your Honor, we have to show, for class action certification, that there are common questions. The common question is the fact that West Penn Power did nothing about the rise in the gauges at Parsons, and nothing to reduce the level of the lake, had this

flood wave coming down, *did not give any warning whatsoever to these people.*

N.T. at 83 (emphasis added).

Before the trial court ruled on the issue, appellants filed an amended motion for class action certification in which they asserted that a common question of fact was "[w]hether Defendant West Penn failed to notify the residents of Washington County through its failure to include Washington County Emergency Management personnel in the Emergency Action Plan developed by West Penn" (Amended Motion for Class Action Certification at 3) and that a common question of law was whether West Penn had thereby been negligent. A second day of hearings on the motion for class action certification was held on May 19, 1988. At the hearing counsel for West Penn explained that West Penn had filed a motion to strike appellants' amended motion for class action certification because the motion was in reality a motion to amend the complaint by adding "as an alleged common issue of fact, a failure to warn or notify, which was not contained in Count I of the original complaint …" (N.T. at 5). After considering appellants' counsel's assertion that lack of warning was raised in paragraph 24 of the original complaint, the trial court denied West Penn's motion to strike the amendment. As noted earlier, one of the issues for which class certification was ultimately granted by the trial court was whether West Penn was negligent "in obstructing and or [sic] releasing improperly flood waters from the Lake Lynn Dam during November 3–6, 1985 and/or in failing to adequately notify the individuals or entities who suffered property damages."

In their pretrial statement appellants explained their failure to warn claim as follows: In 1979, at the direction of the FERC, West Penn developed an Emergency Action Plan which specified a series of alerts to be given to local community emergency management authorities. "By initiating such a plan, West Penn, as an observer of climatological events and their effect on the Cheat River, placed itself in the position of warning downstream residents" (Pretrial

Statement at 5). Although the Plan was based on an engineering study of the downstream effects of a complete failure of the dam, West Penn also used the Plan to alert local community management authorities to serious flood conditions unrelated to a break in the dam. However, the Plan called for West Penn to alert only the Fayette and Greene County authorities, as these were the only possible areas of inundation under the "dam break" analysis. West Penn had never done a study to determine whether the potential inundation areas for a severe flood, unrelated to a dam break, would be the same as those for a dam break; in fact, they would not be the same.

> Because West Penn never performed an inundation study for severe floods, Washington County was not included in the Emergency Action Plan. No telephone calls were made to Washington County by West Penn, nor was there any discussion at Lake Lynn Dam about notifying Washington County. West Penn only notified Fayette and Greene Counties during the night of November 4 and 5, 1985.

Pretrial Statement at 8-9. Thus, "West Penn failed to warn the residents of counties other than Fayette and Greene ... because of the failure to include these geographical areas in the Emergency Action Plan" (Pretrial Statement at 10).

West Penn's motions for judgment on the pleadings and summary judgment led to additional statements concerning appellants' failure to warn claim. In its brief in support of the motions, West Penn argued that appellants had failed to plead a cause of action for "failure to warn" and that in any event West Penn had no such duty. In their responsive memorandum of law, appellants asserted that "if West Penn had properly developed an appropriate warning plan, downstream residents would have had warning of the imminent flooding" (Plaintiffs' Memorandum of Law at 14). They explained their claim as follows:

> Significantly, West Penn Power's Warning and Evacuation Plan stated that West Penn Power established itself

as an agency which would: "provide an effective *public flood* warning and evacuation system for use in the *event of a severe flood* or assumed failure of the Lake Lynn Dam." Warning and Evacuation Plan [emphasis added by appellants].

Regardless of whether West Penn Power chooses to call its plan a "notification" or "warning" plan, the power company assumed the role of "warning" or "notifying" the public of imminent severe flooding.

. . .

Not only have Plaintiffs pleaded a failure to warn case, but genuine issues of fact exist as to whether West Penn properly developed a flood warning plan at all, even though it held its plan out as such to the public. Although West Penn had no idea whether the inundation areas were the same for flooding and dam breaks, the warning system was simply assumed to be the same. Finally, alternative independent grounds based on rainfall were incorporated into the Warning Plan, but West Penn never monitored the rainfall figures at the specified locations.

Genuine issues of fact exist as to whether West Penn adequately notified downstream residents of the Election Day Flood. This issue exists because West Penn's own plan, designed and held out to warn of severe flooding, was seriously flawed from the outset.

Plaintiffs' Memorandum of Law at 42–45 (citations omitted).

Prior to trial West Penn filed several motions *in limine,* one of which asked the trial court to exclude arguments or evidence regarding notification or warning, or the lack thereof. The motion was denied. Before the start of trial the court stated that one of the questions to be decided by the jury would be "whether the defendant ... was negligent in obstructing and/or releasing improperly flood waters from the Lake Lynn Dam during November 3–6, 1985, and/or in failing to adequately notify the individuals or entities which suffered property damages ..." (N.T. at 12).

At trial, as West Penn points out, appellants' expert witness, Thomas Cahill, offered the opinion that West Penn's Warning Plan was "totally inadequate in terms of warning" downstream residents (N.T. at 108). Asked for the basis of his opinion, he explained that

the plan, itself, only sets out a very limited area of potential impact, and in fact, they only anticipated based on that dam break situation, impacts going into Greene and Fayette Counties, and in fact, the flood effects carry all the way down into Washington County, and beyond. So they greatly underestimated the areas downstream that would be affected by a flood on the Cheat River.

N.T. at 108. Mr. Cahill acknowledged on cross-examination, however, that he was aware that West Penn's Emergency Action Plan had been accepted by the FERC and by the Pennsylvania Emergency Management Agency.

At the close of the plaintiffs' case, as noted earlier, West Penn moved for a compulsory nonsuit. Clarence Crumrine, counsel for West Penn, C. James Zeszutek, counsel for the appellants, and the trial court then engaged in the following discussion:

**Mr. Crumrine:** As Your Honor knows, there has been much discussion of what duties, if any, were owed by West Penn Power Company. The fact is, under the law of Pennsylvania, there is no duty to warn.... [T]here is no duty to warn absent the plaintiffs proceeding somehow under the Emergency Action Plan, which is back to the final question.

.    .    .    .    .

**Mr. Zeszutek:** If it please the Court, we have been around and around on the failure to adequately notify under the West Penn Power Emergency Action Plan.

.    .    .    .    .

**The Court:** Then the remaining issue is this failure to warn.

**Mr. Zeszutek:** Failure to warn, under the West Penn Power Emergency Action Plan. Your Honor, the Plan,

itself, through the course of the years, it has been shown that West Penn Power undertook to warn people on the river of the Cheat River Basin waters. In essence, it has been the watchdog of the river because of its position on the river.

**The Court:** It's not the only watchdog on the river. I mean, there's a lot of other agencies involved, are there not?

**Mr. Zeszutek:** Yes, sir, but it does not absolve West Penn Power of the actual knowledge they have as to this actual Emergency Action Plan of 1979 and the revisions where it undertook to notify the public downstream. By taking on that duty, West Penn Power had an obligation under the Restatement, Section 323, and under 323(a) where one undertakes such a duty, they have the duty to carry that particular duty out so as not to increase the harm to those people, the public downstream of Lake Lynn Dam.

**The Court:** What about the defendant's claim that you did not properly raise these issues in your pleadings.

**Mr. Zeszutek:** Your Honor, it was properly raised in the pleadings; it was certified as part of the class question. We have taken—

**The Court:** Did you allude to these matters in your pretrial statement?

**Mr. Zeszutek:** Yes, sir. In the pretrial statement and the motion for summary judgment, it was clearly said that West Penn Power failed to warn adequately under its Emergency Action Plan.

**The Court:** Did you, in your pretrial, question the manner in which the Action Plan had been drawn up?

**Mr. Zeszutek:** Precisely, yes, sir.

**The Court:** And had that been responded to by the defendant?

**Mr. Zeszutek:** They responded to it in the motion for summary judgment in the argument.

**The Court:** You also discussed in your own pretrial statements that you had properly complied with the duty

to warn. Didn't you raise that? This is no surprise to you, the matter of the failure to warn.

**Mr. Crumrine:** It's a surprise to us that this entire case is going off on some warning question.

N.T. at 282–85. The trial court allowed the case to continue on the issue of West Penn's alleged failure to warn.

Before addressing the merits of West Penn's jurisdictional challenge, we note that if the question of federal jurisdiction that West Penn now asks us to decide is the same question that was previously presented to and decided by this Court in *Engle I*, this Court's decision in *Engle I* is the law of the case and the matter cannot be reconsidered in this appeal. *McCormick v. Columbus Conveyer Company*, 522 Pa. 520, 523, 564 A.2d 907, 909 (1989). We conclude, however, that this Court did not confront a "failure to warn" issue in *Engle I*. It is important to remember that this Court's previous ruling on subject matter jurisdiction was made at an early stage in the proceedings, when the Court was confronted only with appellants' complaint and West Penn's preliminary objections. The complaint, as noted earlier, referred to West Penn's release of water from the Lake Lynn Dam "without notice," but there is no mention therein of an alleged "failure to warn" or of a claim based on Section 323 of the Restatement (Second) of Torts. Most importantly, there was no indication at this stage of the proceedings that West Penn's compliance with a regulation of the FERC would become an issue in the case. Thus, this Court summarized appellants' claims in general terms:

> The two-count complaint sounded in negligence and alleged the defendant's maintenance of a dangerous instrumentality (the hydro-electric power dam) and the resultant imprudent release of water retained thereby, which, purportedly, was the direct and proximate cause of flooding in the area for which damages in excess of ten thousand dollars were being sought....

*Engle I*, 366 Pa.Super. at 106, 530 A.2d at 914. The claims stated in the complaint, this Court observed, were grounded

"on traditional common law notions of negligence and the alleged maintenance of a dangerous instrumentality...." *Id.*, 366 Pa.Superior Ct. at 114, 530 A.2d at 918. This Court concluded that

> [n]o assertion is made by the plaintiffs concerning the violation of any federal law, rule, regulation or order, nor is the cause of action brought to enforce any liability or duty created by or to enjoin any violation of any federal law.

*Id.*, 366 Pa.Superior Ct. at 114–15, 530 A.2d at 918–19. According to West Penn, its compliance with a regulation of the FERC became an issue after appellants realized that they would be unable to succeed on their traditional negligence action. Because no such claim was explicitly presented for this Court's review in *Engle I*, the doctrine of law of the case is inapplicable here.

The answers to questions concerning exclusive federal jurisdiction, the United States Supreme Court has held, "depend on the particular claims a suitor makes in a state court—on how he casts his action." *Pan American Petroleum Corporation v. Superior Court of Delaware*, 366 U.S. 656, 662, 81 S.Ct. 1303, 1307, 6 L.Ed.2d 584 (1961), *cited in Engle I, supra.* Our review of the procedural history of the case before us, summarized above, leads us to conclude that appellants have not asserted claims based on violations of the Federal Power Act or of the FERC regulations issued pursuant to the Act, nor do they seek to enforce any liability or duty created thereunder. Instead, they have raised a common law tort claim asserting the negligent performance of a duty—warning downstream residents of severe flood conditions—that was voluntarily assumed by, not statutorily imposed upon, West Penn. Appellants' expert witness acknowledged that West Penn's Emergency Action Plan had been approved by the FERC; the deficiencies that he perceived in the plan involved the duty to warn that West Penn was alleged to have taken upon itself. Therefore, as the basis of appellants' claim is not the Federal Power Act or the FERC regulations, but section

323 of the Restatement (Second) of Torts,[3] we conclude that the Court of Common Pleas of Washington County did not lack subject matter jurisdiction over the action.

### B. Inadequate Pleading

West Penn also contends that because appellants did not include in their complaint a cause of action for failure to warn, the trial court erred in allowing the case to proceed on such a theory. Because our resolution of appellants' direct appeal, to which we now turn, is favorable to West Penn, it is not essential that we consider this issue. However, it is evident from our extensive review of the procedural history of the case that West Penn was not surprised by the turn of events now complained of, since a failure to warn claim was clearly stated by appellants as early as the class action certification stage of the proceedings. Accordingly, we conclude that West Penn's argument is without merit.

## II. APPEAL AT NO. 1449 PITTSBURGH 1990

The issue raised by appellants is whether the trial court abused its discretion in permitting West Penn to introduce evidence, in the form of testimony and photographs, of the damage suffered by persons living south, or upstream, of the Lake Lynn Dam. The issue for the jury, appellants point out, was whether West Penn failed to give adequate warning of the impending flood to *downstream* residents. Therefore, appellants contend, the evidence in question was not relevant to West Penn's "force of nature" or *"vis major"* defense because the upstream flooding occurred, and its extent was known to West Penn, hours before the

3. **§ 323. Negligent Performance of Undertaking to Render Services**
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.

flood waters reached the Lake Lynn Dam. Appellants argue that the evidence was also irrelevant because there was no showing that the upstream residents were similarly situated, and therefore were acting under the same circumstances and knowledge, as West Penn or the downstream residents.

In addition, appellants maintain that the introduction of the evidence of upstream damage was unfairly prejudicial because it made the jury aware of the loss of life and extensive devastation suffered upstream and thereby diminished the significance of appellants' property damage claims in the eyes of the jury. The prejudicial effect of the evidence, appellants claim, is shown by the jury's "inconsistent" verdict that West Penn was negligent for failing to give adequate warning to downstream residents but that West Penn's negligence was not a substantial factor in bringing about appellants' harm. Appellants seek judgment notwithstanding the verdict or a new trial.

In reviewing appellants' claims, we are mindful of the settled principle that, as a general rule, questions concerning the admissibility of evidence are within the sound discretion of the trial court, and the court's decision will not be reversed on appeal absent a clear abuse of discretion. *Commonwealth v. Cargo*, 498 Pa. 5, 15, 444 A.2d 639, 644 (1982); *Hatbob v. Brown*, 394 Pa.Super. 234, 247, 575 A.2d 607, 613 (1990); *Lewis v. Pruitt*, 337 Pa.Super. 419, 428, 487 A.2d 16, 20 (1985). We are also guided in our inquiry by the principle that all relevant evidence should be admitted unless a specific rule bars its admission. *Commonwealth v. Walzack*, 468 Pa. 210, 218, 360 A.2d 914, 918 (1976) [citing 1 Wigmore, Evidence § 9–10 at 289–95 (3d ed. 1940)]; *accord In re Adoption of Durham*, 320 Pa.Super. 508, 517, 467 A.2d 828, 832 (1983) [citing McCormick, Evidence § 185 at 433 (2d ed. 1972)]. Evidence is relevant if it tends to establish facts at issue, *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Super. 230, 243, 433 A.2d 40, 47 (1981), or if it advances the inquiry in some degree and thus has probative value, *Commonwealth v. Walzack, supra* [citing McCor-

mick, Evidence § 185 at 437–38 (2d ed. 1972)]. Our Supreme Court has held that

> [t]he law furnishes no test of relevancy, but tacitly refers it to logic and general experience. Evidence is admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character.

*Gregg v. Fisher,* 377 Pa. 445, 454, 105 A.2d 105, 110 (1954) (quoting trial court), *quoted in* Packel & Poulin, Pennsylvania Evidence § 401 at 121 (1987).

Having reviewed the arguments of the parties and the evidence of record in accordance with the guidelines just stated, we do not agree with appellants that the evidence of upstream damage was irrelevant. In response to appellants' claims, West Penn raised the affirmative defense of *vis major* or force of nature (formerly "Act of God"),[4] that is, "the concept of a natural force of such inevitability and irresistibleness that man cannot cope with it, either to predict it, forestall it, or control it when it arrives ...," *Goldberg v. R. Grier Miller & Sons, Inc.,* 408 Pa. 1, 8, 182 A.2d 759, 763 (1962), or "an unusual, extraordinary, sudden, and unexpected manifestation of the forces of nature which cannot be prevented by human care, skill or foresight," *Carlson v. A. & P. Corrugated Box Corporation,* 364 Pa. 216, 219, 72 A.2d 290, 291 (1950). The relevance of the challenged evidence to West Penn's forces of nature defense is illustrated by the following exchange between Clarence Crumrine, counsel for West Penn, Paul Tershel, counsel for appellants, and the trial court, which took place when Mr. Crumrine sought to call as a witness Robert Sigler, one of the upstream residents:

> **Mr. Crumrine:** Mr. Sigler is a resident of Albright, West Virginia, and he has two hobbies which are piloting and photography and he combined them, and he has taken pictures all over West Virginia before and immediately

---

4. In its new matter West Penn used the terms "act of God" and *"force majeure."*

after the flood on the Cheat River. He knows something about the flooding and his family home was washed away. He can identify some debris which eventually got to Lake Lynn Dam. He can testify to the terrain and what it's like since he is a pilot.

**The Court:** Is this to damage sustained?

**Mr. Crumrine:** There are pictures of it.

**Mr. Tershel:** We would object to that as being irrelevant to the issue of whether West Penn failed to warn the people downstream, and that's the only issue in this case.

**Mr. Crumrine:** It goes to what used to be an Act of God and is now Forces of Nature, and what happened to Mr. Engle is Forces of Nature.

**The Court:** Will you have testimony to the effect generally that if warnings were given, all of this damage would have occurred?

**Mr. Crumrine:** Would you repeat that, Your Honor?

**The Court:** Generally, whether warnings were given or not, in view of the extent of this flood, that the damage would have been incurred anyway?

**Mr. Crumrine:** Yes.

**The Court:** We'll allow it.

N.T. at 395–96.

As this discussion indicates, a crucial issue was whether the extent of the flood was so great that warnings given by West Penn would not have averted the damage suffered by downstream residents. The evidence of upstream flooding served to expand the jury's knowledge of the enormity of the flood and thereby advanced the inquiry with regard to this issue. Accordingly, we do not hesitate to conclude that the challenged evidence was relevant.

■ The Engles also contend that the evidence in question was not admissible because the upstream residents were not similarly situated to the downstream residents, who relied upon warnings from West Penn. It is true that unless a prior accident happened under the same or similar circumstances, evidence of its occurrence will not be admit-

ted. *Whitman v. Riddell,* 324 Pa.Super. 177, 180–81, 471 A.2d 521, 523 (1984). However, the upstream evidence was not "evidence of an occurrence other than the one at issue" (Brief for Appellants at 17), but rather was evidence of the extent of the "forces of nature" set in motion by the storms of November 3–6, 1985.

▮ Nor do we find merit in appellants' claim that the evidence, even if relevant, should have been excluded because its prejudicial effect substantially outweighed its probative value. Specifically, appellants object to the numerous photographs of the devastation in upstream communities, as well as to the witnesses' testimony concerning houses being swept away, logs moving like torpedos, destruction similar to that seen in movies and pictures of the Second World War, and the direct and indirect loss of life as a result of the flooding. According to appellants, the admission of this evidence of upstream devastation served to devalue the seriousness of appellants' losses in the eyes of the jury.

While the evidence in question undoubtedly provided the jury with graphic descriptions of losses more severe than appellants', it was admitted for the express purpose of conveying to the jury the enormity of the flood. Any evidence which would establish the existence of a *vis major* defense would necessarily have to impress upon the jury the scope and severity of the flood in question. Analogously, homicide cases often involve evidence of an extremely unpleasant nature, yet our Supreme Court has held that such evidence is admissible if it would further the inquiry into the defendant's intent or state of mind. *See Commonwealth v. Dollman,* 518 Pa. 86, 93, 541 A.2d 319, 321 (1988) (evidence of disposition of victim's body admissible to prove intent); *Commonwealth v. McCutchen,* 499 Pa. 597, 602, 454 A.2d 547, 549 (1982) (color slides of victim's body, showing injuries, admissible for same reason). "The function of the trial court is to balance the alleged prejudicial effect of the evidence against its probative value, and it is not for an appellate court to usurp that function." *Com-*

*monwealth v. Dollman,* 518 Pa. at 91, 541 A.2d at 321. There is no reason to do so here.

Appellants' final argument, which is stated as a separate issue in their brief, is that "the irrelevant and prejudicial evidence of upstream damages confused the jury into an inconsistent finding that there was no causal connection between the negligent behavior of West Penn Power and the harm suffered by plaintiffs" (Brief for Appellants at 2). Such a verdict is not inconsistent on its face, however. The following observation of the Third Circuit Court of Appeals, although made in a failure to warn case that was very different from the present one, is nevertheless pertinent to this point:

> Ford [the defendant] cannot be held liable on a failure-to-warn theory merely because a jury concludes that more warnings are needed to remind drivers of the intricacies of standard transmissions. Rather, liability may result only when there is sufficient evidence that additional warnings or reminders may have made a difference.

*Conti v. Ford Motor Company,* 743 F.2d 195, 199 (3d Cir.1984). In addition, as West Penn points out, appellants did not object to the wording of the jury slip. Finally, we have concluded that the evidence in question was neither irrelevant nor unfairly prejudicial.[5] Accordingly, we conclude that appellants' final claim does not entitle them to relief.

Judgment affirmed.

---

5. To the extent that appellants have intended with this issue to challenge the weight of the evidence, and assuming that such a challenge is cognizable by this Court, we conclude that the trial court has adequately discussed and correctly decided the issue in the opinion of August 28, 1990.