In re PETITION FOR INVOLUNTARY COMMITMENT OF Joseph R. BARBOUR, as a severely mentally disabled person.

**Appeal of Joseph S. Barbour, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1999.

Filed June 30, 1999.

Ronald Keeler, Bedford, for appellant.

Dwight Diehl, Bedford, for Mental Health Hearing Officer, participating party.

Before DEL SOLE, JOYCE and BECK, JJ.

DEL SOLE, J.:

¶ 1 This appeal is from a Court of Common Pleas order denying a petition to review the certification of a mental health review officer. We reverse.

¶ 2 Appellant, age twenty-six, after allegedly telephoning a bomb threat to Altoona Hospital and acting in a paranoid and bizarre manner, was admitted to the Somerset Community Hospital on May 17, 1998 pursuant to 50 P.S. § 7302.[1] Appellant was certified for an additional twenty days under 50 P.S. § 7303.[2] He was then transferred to the Bedford Long–Term Structured Residence (LTSR) on June 2, 1998 pursuant to 50 P.S. § 7304(b) for a

period of ninety days. On August 27, 1998, Appellant was certified by a mental health review officer for an additional one hundred eighty days inpatient treatment pursuant to 50 P.S. § 7305. Subsequently, Appellant filed a petition to review the mental health review officer's certification pursuant to 50 P.S. § 7109(b). Following a hearing before Judge Daniel Howsare, Appellant's petition was denied. This appeal followed.

 ¶ 3 Appellant presents the following issues for our consideration: (1) whether there was sufficient evidence to justify further inpatient psychiatric treatment; (2) whether the order employed the least restrictions consistent with adequate treatment; and (3) whether the lower court improperly relied upon hearsay testimony offered by a lay witness relating to Appellant's diagnosis of bi-polar disorder.[3]

 ¶ 4 While three issues have been raised, our disposition requires that we only review Appellant's final issue which contends the lower court improperly considered testimony offered by a lay witness relating to Appellant's diagnosis of bi-polar disorder. We are mindful that competent relevant evidence having probative value is generally admissible and this court on appeal will accord a large measure of discretion to the trial court regarding its admission or exclusion. *See Engle v. West Penn Power, Co.,* 409 Pa.Super. 462, 598 A.2d 290 (1991).

¶ 5 Specifically, Appellant argues the trial court, in reaching its conclusion, improperly admitted and relied upon evidence over the objection of Appellant's counsel, in the testimony of a lay witness Lisa Buckwalter, that Appellant is severely

1. Involuntary emergency examination and treatment authorized by a physician—not to exceed one hundred twenty hours.

2. Extended involuntary emergency treatment certified by a judge or mental health review officer—not to exceed twenty days.

3. Although Appellant's 180–day involuntary commitment calculated from August 27, 1998 presumably has ended, the issues raised by

this appeal are not moot since they are capable of repetition and may evade review. *See In re Woodside,* 699 A.2d 1293, 1296 (Pa.Super.1997) (appeals from involuntary commitment orders which have expired are not moot because of the important liberty interest involved and because most involuntary commitment orders expire before appellate review is possible, and thus, challenged procedures could continue yet their propriety would evade appellate review).

mentally disabled by reason of a mood disorder which is known as bi-polar.[4] Ms. Buckwalter is the program director for the LTSR and a member of the interdisciplinary treatment team[5] assigned to Appellant. Her testimony was used to establish that involuntary commitment was necessary because Appellant posed a clear and present danger to himself if not others.

¶ 6 This court has noted in the past that the Court of Common Pleas is to conduct a *de novo* review of the determination of the mental health review officer. This is because the determination of the review officer is not a final order that is subject to appeal to an appellate court. *See In re J.M.*, 454 Pa.Super. 276, 685 A.2d 185, 192 n. 17 (1996).

¶ 7 Black's Law Dictionary defines a hearing *de novo* as "a new hearing or a hearing for the second time, contemplating an entire trial in same manner in which matter was originally heard and a review of previous hearing. On hearing '*de novo*' court hears matter as court of original and not appellate jurisdiction." Black's Law Dictionary 649 (5th ed.1979). Our case law accords with this definition. *See Commonwealth v. Virnelson*, 212 Pa.Super. 359, 243 A.2d 464, 469 (1968) (*de novo* review entails full consideration of the case anew, and the reviewing body is in effect substituted for the prior decision maker and redecides the case).

¶ 8 Further, in addressing the admission of evidence at such *de novo* hearings, the Pennsylvania Supreme Court has stated that considering the grave consequences of an adjudication of mental illness, it is imperative that the commitment court strictly comply with the rules of evidence generally applicable to other proceedings which may result in an extended deprivation of an individual's liberty. The Commonwealth's burden to present admissible evidence at the commitment hearings is small compared to the individual's interest in not being deprived of liberty on the basis of inherently unreliable evidence. *See In re Hutchinson*, 500 Pa. 152, 454 A.2d 1008, 1011 n. 8 (1982).

¶ 9 Here, at the *de novo* hearing, Ms. Buckwalter was identified simply as the LTSR program director and when asked by Appellant's counsel admitted that she is not a physician. N.T., 10/7/98, at 9. In addition, Ms. Buckwalter was not qualified by the trial court as an expert nor did she purport to be. Rather, she couched her opinion of Appellant's medical diagnosis in "lay terms."

¶ 10 Our courts have long held that a lay witness may testify about the apparent physical condition of a person. However, they are barred from testifying to the existence or non-existence of a disease, the discovery of which requires the training and experience of a medical expert. *Travellers Ins. Co. v. Heppenstall Co.*, 360 Pa. 433, 61 A.2d 809 (1948).

¶ 11 We conclude, therefore, that the lower court improperly permitted Ms. Buckwalter, a lay witness and non-expert, to provide expert testimony regarding Appellant's medical diagnosis, specifically the existence of a mood disorder know as bipolar. Accordingly, absent competent admissible expert testimony establishing Appellant's mental illness, there was no evidence that Appellant would be a threat to himself thereby requiring involuntary commitment.

---

4. The following transpired at the hearing:
 MS. BUCKWALTER: He does have a mental illness diagnosis.
 MR. KEELER: I don't know that she would be qualified to answer the specific questions about his mental diagnosis.
 THE COURT: Well, what does it mean he is severely mentally disabled.
 MS. BUCKWALTER: He has in lay terms which I can answer he has a mood disorder. He is bipolar. In old days that was manic-depressive and without his medication he becomes a threat to himself.
 N.T., 10/7/98, at 15–16.

5. According to testimony, Appellant's interdisciplinary treatment team includes Ms. Buckwalter; Dr. Edward Lipski, Appellant's psychiatrist; Ms. Cathy Plesnik, Appellant's intensive case manager; and Ms. Dina Butterbaugh, Appellant's base service unit case manager and his therapist.

¶ 12 Order reversed. Jurisdiction relinquished.

¶ 13 Judge BECK files a concurring opinion.

BECK, J., concurring:

¶ 1 I concur in the result reached by the majority, but write separately to state that the failure of the appellee to offer the testimony of a professional with a medical degree is not always fatal to the case.

¶ 2 From my reading of the record, it does not appear that appellant was challenging his mental illness diagnosis or the psychiatrists, current or former, who made the diagnosis. Instead, appellant's opposition to his continued involuntary commitment was based on a claim that his recovery could progress with means less restrictive than those of an inpatient program.

¶ 3 The court began the hearing in this case by noting that it had reviewed the certification in the file. Thereafter, as the statute provides, the court welcomed evidence from the parties. The witness at issue here, Ms. Buckwalter, testified in her capacity as the program director for the long-term structured residence at which appellant resided, as well as a member of the interdisciplinary treatment team assigned to appellant's case. That team included mental health professionals other than Ms. Buckwalter, such as the facility's psychiatrist, an intensive case manager and appellant's therapist.

¶ 4 Among other things, Ms. Buckwalter told the court that appellant had a "mental illness diagnosis" and, when he came to her facility, he had a history of prior hospitalizations and failed to take medication prescribed for his illness. She relayed to the court a conversation she had with appellant wherein he told her that "he felt so good, ... he did not need the medication any longer." Ms. Buckwalter's testimony regarding appellant's mental illness was limited to this rather brief exchange. While I agree with the majority that such testimony is insufficient for a *de novo* review of the case, I do not agree that the court was precluded from relying on Ms. Buckwalter's testimony regarding appellant's *previous* and ongoing mental illness diagnosis and her first-hand knowledge of his refusal to follow his prescribed medical treatment plan. Nor do I believe that Ms. Buckwalter's testimony alone, had it been more fully explored, would be insufficient as a matter of law.

¶ 5 In my opinion, each case must be considered on its particular facts and in light of the errors asserted by the person who has been involuntarily committed. Here, the error was not necessarily the absence of a medical doctor's testimony,[6] but instead, the absence of a full and thorough presentation of the facts and circumstances surrounding appellant's commitment and treatment.

¶ 6 Because appellant was not accorded a full "new hearing," the conclusions reached by the trial court cannot be sustained.

---

6. In the mental health field, it is accepted and recognized that fully trained and licensed professionals other than medical doctors are qualified to diagnose and treat mental illness.