Darlene GIGUS

v.

GILES & RANSOME, INC. and NPK Construction Equipment, Inc., Caterpillar, Inc., C. Abbonizio Contractors, Inc. and Nippon Pneumatic Manufacturing Company, Ltd.

**Appeal of Darlene and Scott Gigus.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.
Filed Jan. 5, 2005.
Reargument Denied March 14, 2005.

Donna A. Casanto, Springfield, for appellants.

John J. Hatzell, Philadelphia, for Giles & Ransome.

Anthony J. DiMarino III, Philadelphia, for Caterpillar.

Richard S. Margulies, Philadelphia, for NPK.

Lorraine McGlynn, Philadelphia, for Nippon.

Before: DEL SOLE, P.J., GANTMAN and OLSZEWSKI, JJ.

DEL SOLE, P.J.:

¶ 1 This is an appeal from the trial court's order granting a non-suit at the

conclusion of Appellants'[1] case-in-chief in which they sought to recover damages based on a product liability claim. Upon review of Appellants' specific challenges, an examination of the record, and application of pertinent law, we affirm.

¶2 Appellant was injured during the course of her employment while operating an excavator which was equipped with a hydraulic hammer and tool point. Appellant was using the machinery to chop rocks when a piece of the hammer tool point broke off, flew into the cab of the excavator and struck Appellant in the shoulder. It was undisputed that at the time of the accident Appellant did not have in place the safety glass windshield which came equipped with the excavator.

¶3 Appellants brought an action against a number of defendants including Giles & Ransome, Inc., the company which rented Appellant's employer the excavator, Caterpillar, Inc., the manufacturer of the excavator, NPK Construction Equipment, Inc., the manufacturer and distributor of the hammer and Nippon Pneumatic Manufacturing, manufacturer of the tool point.

¶4 Appellants proceeded to trial before a jury claiming the product was unsafe because it failed to include a Lexan shield and because it did not come equipped with certain specific warnings. Based on Appellants' proposed verdict sheets, the trial court found that Appellants had withdrawn all negligence claims. After Appellants rested their case following six days of testimony, motions for non-suit were made by all Appellees and granted by the trial court. Appellants' timely filed post-trial motions were denied and this appeal followed.

¶5 Appellants raise six issues on appeal. The first three challenge the court's grant of a non-suit.[2] Therein Appellants argue that had the trial court employed the proper standard of review, it would have necessarily concluded that they had presented sufficient evidence to allow their product liability claims to be determined by a jury.

¶6 A trial court's entry of compulsory non-suit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make such a determination prior to submission of the case to a jury. *Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649 (1996). In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor. *American States Ins. Co. v. Maryland Casualty Co.,*

---

1. Appellants are Darlene T. Gigus and her husband, Scott Gigus. References to Appellant, singular, refer to Darlene T. Gigus.

2. The three issues are:
   1. Whether the trial court erred in denying Plaintiffs' Motion for Post Trial Relief and refusing to remove the non-suit and grant a new trial?
   2. Whether the trial court erred by granting a non-suit and failing to find that Plaintiffs presented sufficient evidence for all of their products liability claims to be presented to a jury for determination?
   3. Whether the trial court erred by failing to view the evidence in the light most favorable to the Plaintiffs and by failing to resolve all evidentiary conflicts in Plaintiffs' favor?

Appellants' Brief at 2.

We note that the argument portion of Appellants' brief does not list and address separately these issues as presented in the Statement of Questions, contrary to Pa.R.A.P. 2119. We therefore elect to address them together. However, included in Appellants' discussion of these claims are numerous sub-issues and arguments thereon. We will address only the issues set forth in Appellants' statement of questions. Pa.R.A.P.2116(a).

427 Pa.Super. 170, 628 A.2d 880 (1993). An order denying a motion to remove a compulsory non-suit will be reversed on appeal only for an abuse of discretion or error of law. *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985).

¶ 7 In order to recover on a theory of strict products liability, a plaintiff must show that the product was defective when it left the hands of the manufacturer and that the defect was a proximate cause of the plaintiff's injury. *Fletcher v. Raymond Corp.,* 424 Pa.Super. 605, 623 A.2d 845, 848 (1993). A product may be deemed defective where it lacks adequate warnings or instruction necessary for the safe use of the product. *Id.*

¶ 8 The trial court explained its rationale for concluding that Appellants failed to offer proof that the excavator was defective and that a non-suit was properly entered. It found that Appellants did not present any evidence to establish that the windshield of the excavator, made of one-quarter-inch-thick laminated safety glass, would have failed to protect Appellant from her injury had it been in place. Trial Court Opinion, 5/18/04, at 7.

¶ 9 The trial court also noted that the excavator included a warning sticker on the side of the windshield which read:

! DANGER

DO NOT OPERATE NPK HAMMER UNTIL READING AND UNDERSTANDING THE NPK OPERATORS MANUAL. FLYING DEBRIS CAN CAUSE SERIOUS OR FATAL INJURY. KEEP BYSTANDERS AWAY. THE OPERATOR MUST BE PROTECTED BY A SUITABLE SHIELD.

The court further noted that the label included a diagram which displayed improper use by including a drawing of a windshield in an open position with a large red "X" over the diagram. In a second drawing, depicting proper usage, a windshield is in place in front of the operator and it shows debris bouncing off the windshield. The trial court recalled that Appellant had testified that she understood from the manual which came with the equipment that the operator had to have something in front of her before beginning to use the hydraulic hammer. Nevertheless, the court found she failed to heed these clear warnings and in fact choose to disregard them by operating the excavator and using the hydraulic hammer without first closing the window in place.

¶ 10 Appellants assert they did not have to prove that the windshield provided on the equipment would not have protected Appellant. They claim the defendants created a "smokescreen" with their repeated reference to the safety glass window. Appellants' Brief at 11. Appellants maintain that a Lexan shield was a necessary element to the safe operation of the machinery and that Appellee NPK Construction Equipment, Inc. specifically recommended in their warning sticker "either a Lexan shield or replacement of the cab windows with Lexan." *Id.* at 10.

¶ 11 Our review finds no error in the trial court's analysis. The excavator came equipped with a protective windshield and a warning notice to use a shield before operation. Appellant conceded that she was aware the machinery was to be operated with the windshield in a closed position, yet she failed to heed this warning. Thus, for Appellants to succeed in their product liability action, it was necessary for them to prove that the product would not have been safe even if the warnings were followed and the windshield was in place when the fragment flew toward the operator.

¶ 12 The courts of this Commonwealth have recognized and applied Com-

ment j of Section 402A of the Restatement (Second) of Torts, which provides in part: "Where warning is given the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807, 811 (1984). "[T]he law presumes that warnings will be obeyed." *Davis v. Berwind Corp.*, 547 Pa. 260, 690 A.2d 186, 190 (1997).

■ ¶ 13 In *Fletcher v. Raymond Corp.*, 424 Pa.Super. 605, 623 A.2d 845 (1993), the plaintiff, who was riding on the forks of a forklift when he fell sustaining injury, sought to establish that the product was defective because the manufacturer failed to give adequate warnings of the danger inherent in riding on the forks. The forklift had warnings posted on it advising that riders were not permitted and directing that passengers not be carried for safety reasons. Despite these warnings the plaintiff admitted that he and other employees routinely rode around on the forks of the forklift trucks. The trial court entered summary judgment for the defendants, which was affirmed on appeal, citing to comment j to § 402A of the Restatement which advises that a seller may reasonably assume its warning will be read and heeded. Where a product is safe for use when its warnings are followed, it is not defective, nor unreasonably dangerous. *Id.* at 848.

¶ 14 Thus, if the excavator in this case was safe for use had its warnings been heeded, and the protective windshield been placed up at the time of operation, it was not defective. The trial court was correct in finding that it was Appellants' responsibility to establish that had the windshield been in place at the time of the accident, as required by the warnings, it would have been insufficient to protect Appellant from the injury she sustained. Our review of the record supports the trial court's conclusion that such evidence was not presented in this case. A question of whether a Lexan shield would have offered more protection and would be the type of shield necessary for proper protection did not need to be addressed where Appellants failed to establish that the safety feature offered, but not used, was insufficient protection.

■ ¶ 15 Based upon this same reasoning we reject Appellants' claims that additional warnings, regarding the use of the tool point on hard rock, hammering in excess of a certain length a time, or the use of a Lexan shield, were necessary. Where Appellants failed to offer evidence that the warnings given and the safety feature offered, which was not used, would have failed to protect Appellant from the injury she sustained, it cannot be found that additional warnings were necessary. A manufacturer is not required to warn against dangers that may arise if the stated warnings are not heeded. *Davis v. Berwind Corp.*, 690 A.2d at 190.

■ ¶ 16 Appellants next set forth two evidentiary challenges. They claim the trial court erred by improperly restricting plaintiffs' experts' testimony. They assert that the testimony sought to be elicited from the experts was within the fair interpretation of the experts' reports and would not have resulted in unfair surprise. They also claim the trial court failed to consider relevant documents, brochures and photographs.

■ ¶ 17 This Court on appeal will accord a large measure of discretion to the trial court regarding the admission or exclusion of evidence. *Engle v. West Penn Power Co.*, 409 Pa.Super. 462, 598 A.2d 290 (1991). The trial court in this case advised

the parties that "all witnesses" were being restricted to the "fair interpretation of the four corners of [their] reports." N.T., 11/6/02, at 408. The court stated it would be interpreting the reports strictly "on both sides." We perceive of no abuse of discretion in this ruling. Further, Appellants point to no specific questions they were precluded from pursuing, nor do they explain how their inability to ask certain questions of their experts prejudiced their case.

¶ 18 The trial court also sustained all objections to questions asked of Appellants' witness which related to photographs contained in a product brochure on the basis that they were irrelevant. The brochure pictured an operator using a backhoe fitted with an NPK hammer without a shield between the tool and the operator. The trial court found that the brochure was "obsolete," based upon testimony from the witness that the "brochure was obsolete in approximately 1996" and that it had "been superseded by new material." N.T., 11/8/02, at 741–744. We find no abuse of discretion in the trial court's ruling.

¶ 19 In their final claim Appellants assert the trial court erred in *sua sponte* dismissing their negligence claim when a jury interrogatory addressing negligence was not included in Appellants' proposed jury interrogatories. We have reviewed the record on this point and find Appellants made no objection at trial. The trial court stated:

> So, there's no question about negligence and therefore on the basis of that submission the plaintiff has withdrawn all negligence claims that they are presenting.

N.T., 11/6/02/, at 193. As Appellants voiced no objection to the trial court's conclusion that their negligence claims had been withdrawn, a complaint regarding the trial court's action may not be raised for the first time on appeal. *Mazlo v. Kaufman*, 793 A.2d 968 (Pa.Super.2002).

¶ 20 Judgment affirmed.